### City of Ludlow v. Ludlow, et al.

(Decided December 12, 1919.)

Appeal from Kenton Circuit Court
(Common Law and Equity Division).

1     Municipal Corporations—Annexation of Territory.—Where land surrounded by two municipalities abuts the only connecting highway between said cities, and a considerable portion thereof is shown to be suitable for municipal use and residential purposes, an ordinance annexing same to a fourth class city will be sustained, where no material injury will be caused the owner of the property and many benefits will accrue to the owners because of such annexation.

2.    Municipal Corporations—Annexation of Territory.—Considering the benefits incident to annexation to a city of the fourth class the payment of municipal taxes on a tract of unimproved land, used as a pasture, sought to be so annexed is not such injury to the owners as is contemplated by statute.

HERBERT S. JACKSON and JACKSON & WOODWARD for appellant.

MYERS & HOWARD for appellees.

Opinion of the Court by Judge Quin—Reversing.

By an ordinance duly passed by its council, appellant sought to annex to its corporate limits a tract of land 1,255 by 533 feet, entirely surrounded by the city of Ludlow on the north and west and by the city of Covington on the south and east and fronting on the Ludlow highway. The highway is within appellant's present limits, but only one-half of it has been improved, because to pave the entire width of the street would have cast the cost of the remaining one-half on the city. This throughfare is the only connecting roadway between the cities of Ludlow and Covington. The appellees, four in number, are the owners of the entire tract to be annexed, and they are resisting annexation claiming it would cause material injury to them and that the realty consists of a rough, steep and precipitous hillside, used only for pasturage, not adapted to agricultural purposes nor suitable for municipal use, and they would derive no possible benefit therefrom. In a very learned opinion the chancellor ordered a dismissal of the petition.

The city of Ludlow is a city of the fourth class. A part of its charter (Ky. Stats., sec. 3483), is as follows:

". . . If the court, upon hearing, be satisfied that less than a majority of the resident voters of the territory sought to be annexed or stricken off have remonstrated against the proposed extension or reduction, and that the proposed extension or reduction of the limits of the city, as the case may be, will be for the interest of the city, and will cause no material injury to the owners of real estate in the limits of the proposed extension or reduction, it shall so find, and the proposed extension or reduction shall be decreed or adjudged. But if the court shall find that a majority or more of the resident voters in the territory to be affected or the owner or owners of said property, if there be no resident voter, remonstrated against such change, and that said change will cause material injury to the owners of real estate in the limits of the proposed extension or reduction, it shall so find, and said extension or reduction shall be denied."

In the matter of extension of boundaries the charter of fourth class cities is different from that of cities of the five other classes in that the charters of the latter contain this provision:

"If the courts shall be satisfied that seventy-five per cent or more of the resident freeholders of the territory sought to be annexed or stricken off have remonstrated, then such annexation or reduction shall not take place, unless the jury (court) shall find from the evidence that a failure to annex or strike off will materially retard the prosperity of such city, and of the owners and inhabitants of the territory sought to be annexed or stricken off. In case the jury (or court) shall so find, the annexation or reduction shall take place, notwithstanding the remonstrance." Ky. Stats., secs. 2762, 3051, 3287, 3612 and 3655.

Since all the owners of the property have remonstrated the single question presented for our consideration is, whether the change or annexation will cause material injury to the owners of real estate in the proposed extension.

The Ludlow highway is constructed along the side of an Ohio river hill. On that portion in the city limits, to-wit: on the north side of the road, or on the descending grade, several houses have been built during the past twenty-five years; appellees' land is to the south or on the ascending grade. No houses have ever been built on the land. While some of the land is hilly, precipitous and rough, a large portion of it abutting the highway is suitable for building purposes to a depth of 150 to 200 feet. As cultivation would cause the soil to wash away, the land has been converted into a pasture, a use that would not be interfered with by annexation; hence no material or substantial injury to the use would result from annexation.

After all there can be and is but one real objection to the annexation, viz.: the payment of municipal taxes. That residents or owners of property in the territory sought to be annexed will be compelled to pay taxes to the city is not the character of injury contemplated by statute, considering the benefits received. Yancy, &c. v. Town of Frankfort, 23 Rep. 2087.

Appellees could not suffer material injury from the annexation, if the city boundary is so extended as to include this property, where the inclusion will bring distinct advantages. Benefits and injury are inconsistent expressions; the existence of one negatives the presence of the other. It is inconceivable that appellees would

suffer material or any injury from the annexation when we consider the beneficial results incident to incorporation in the city, viewed in the light of the facts of the record before us and the location of the property.

As an offset to the burden of taxation, the highway is necessarily a benefit to appellees and their property. It enables them to market their stock or produce in the adjacent cities. The proximity of waterworks is an advantage, accessible to any purchasers of lots, or for watering the stock as long as the land is used for pasturing cattle, besides offering an inducement to prospective buyers.

There are no buildings on the land at the present; this is due doubtless to the fact that appellees have never offered the property for sale. A number of houses have been erected on the opposite side, and a witness for appellant says that with proper grading this tract would be more desirable for building purposes than much of the property on the north side It is said to be better adapted for residential purposes than some other property in Ludlow, while several witnesses state that the sister city of Cincinnati has improved property as bad or worse than appellees' land. It is said there has been no market for the land, but one of the appellees states that he has been asked by one or two persons to give them a price on the property, but he declined to do so because he did not think they were purchasers and he did not intend to satisfy idle curiosity. From this it appears he not only has made no effort to dispose of the property, but on the contrary has refused to submit a price when requested.

Accompanying incorporation in the city limits are the benefits and advantages incident to urban existence, such as fire and police protection, schools, water, electricity, gas, city rates on telephones, fire insurance and street cars. Some people are content to remain outside the city limits, enjoy the same benefits as the citizens without sharing any portion of the expense incident to the maintenance of the municipal government. It is argued that these attributes of city life do not apply to appellees since the property is not improved; no one is occupying the premises and there is no one to reap the advantages referred to, such as schools and the like.

There are hundreds and thousands of people in our cities today who have no children and yet they are taxed to support the schools. We may look for prospective expansion and the accruing benefits as a result of annexation. Besides, as said in Kelley v. Pittsburg, 104 U. S. 78:

"Every man in a county, a town, a city, or a state is deeply interested in the education of the children of the community, because his peace and quiet, his happiness and prosperity, are largely dependant upon the intelligence and moral training which it is the object of the public schools to supply to the children of his neighbors and associates, if he has none himself.

"The officers whose duty it is to punish and prevent crime are paid out of the taxes. Has he no interest in maintaining them because he lives further from the court house and police station than some others?"

W. S. Ludlow declined to put a valuation on the land, but estimated the value of the property on the north side from $15.00 to $30.00 a foot. Some of the witnesses state that land on the south side is as desirable or as valuable as that on the north side. Land increases in value by reason of proximity to a city, its value being derived from its prospective city use and not from its present county use. The street cannot be paved to its full width without great cost to the city, unless the property is annexed and we are satisfied its incorporation in the city limits will not result in any injury to appellees other than the payment of city taxes, and that the benefits received and the increased valuation of the property following annexation will be greater than the taxes levied.

Carrithers v. City of Shelbyville, 126 Ky. 769, 144 S. W. 744, is a suit brought under the same statute, Shelbyville being a city of the fourth class. In resisting an extension of the city boundary embracing their property it was contended among other things that the burden of municipal taxation would be added without benefit to plaintiffs. From an examination of the original record in this case we find it was alleged in the petition that the Carrithers' property was wholly unimproved, there being no buildings or structures of any kind upon same, nor had any buildings ever been erected thereon, and the property of appellee Murphy was also unimproved, contained a rock quarry and was otherwise used exclusively

for farming purposes. Though alleging that annexation would produce irreparable injury to their property, a verdict in the city's favor was sustained. This opinion contains a very illuminating history of the origin and growth of the law pertaining to municipal corporations. The creation of municipalities is always and essentially a political act.

Speaking on this subject Judge Dillon, in his work on Municipal Corporations, thus states (Sec. 355, 5th ed.):

"Not only may the legislature originally fix the limits of the corporation, but *it may, unless specially restrained in the Constitution, subsequently* annex, or authorize the annexation of, contiguous or other territory, and this without the consent, and even against the remonstrance, of the majority of the persons residing in the corporation or on the annexed territory. And it is no constitutional objection to the exercise of *this power of compulsory annexation* that the property thus brought within the corporate limits will be subject to taxation to discharge a pre-existing municipal indebtedness, since this is a matter which, in the absence of special constitutional restriction, belongs wholly to the legislature to determine."

To the same effect see McQuillen on Mun. Corp., sec. 265.

In Town of Williamstown v. Matthews, 103 Ky. 121, annexation was denied, likewise in town of Latonia v. Hopkins, 104 Ky. 419.

In the first case the court recognized the propriety of annexing some territory to the town limits, but not being familiar with the location of the territory, and it being impossible, in the absence of a map to tell whether the annexation would be advantageous, weight was given to the findings of the lower court. In the second case a city containing an area of 26 acres and with 275 inhabitants sought to annex 1,050 acres of surrounding territory with a population from 1,500 to 2,000 persons.

The facts of these cases are different from those presented by this record. We are satisfied that a large and considerable portion of appellees' land is suitable for municipal purposes, and its inclusion in the city boundary, with the accompanying benefits, would be such an invitation and inducement to homeseekers and

investors as would create a demand for the property fronting the highway. The enhanced valuation will more than offset the amount of taxes.

Having reached the conclusion that the annexation of appellees' property will not cause material injury to them the judgment of the lower court will be reversed for further proceedings not inconsistent with this opinion.