## Gilley, et al. v. City of Russell.

(Decided February 5, 1926.)

### Appeal from Greenup Circuit Court.

1. Municipal Corporations—Abuse of Discretion to Adjudge Annexation Opposed by 90 Per Cent. of Voters of Territory.—Where in ex parte proceeding, under Ky. Stats., section 3483, by city to annex territory, 90 per cent. of resident voters of territory proposed to be annexed were opposed to it, it would be an abuse of discretion to adjudge annexation, in absence of controlling reason why annexation is vitally essential to welfare of city.

2. Municipal Corporations—Annexation of Territory Held Unnecessary.—Proposed annexation of territory of approximately 1,800 acres to city of about 3,000 inhabitants held improper, being wholly unnecessary and resulting in advantage to no one, particularly in view of fact that city was in debt and collecting taxes to the limit.

L. D. BRUCE, E. E. FULLERTON and JOHN T. DIEDERICH for appellants.

S. S. WILLIS for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Reversing.

Russell is a city of the fourth class and is situated in Greenup county on the Ohio river at a point approximately opposite Ironton, Ohio. It is on the main line of the C. & O. R. R. from Cincinnati to Washington. It is in a small way an important town because there is located there by the C. & O. R. R. Company extensive yards, is essentially a railroad town, and contains about 2,500 or 3,000 inhabitants. There is also across the Ohio river at that point a bridge called the Russell-Ironton bridge.

The present corporate limits of Russell embrace a territory not exceeding 200 or 250 acres—probably less— and it is between the Ohio river on the north and a large hill or mountain on the south, and the tracks of the C. & O. R. R. Company run through the corporate limits for some distance, but the railroad yards, where there are many sidings, switches, etc., are east of the corporate limits, and run parallel with the river.

This is an *ex parte* proceeding by the city of Russell under authority of an ordinance theretofore passed, and under the provisions of section 3483, Ky. Stats., being a part of the charter for cities of the fourth class, for the purpose of annexing certain designated territory to the city. The appellants, who are resident voters of the territory proposed to be annexed, entered their appearance and protested against the annexation as they were authorized by the statute to do.

That section of the statute, after prescribing the procedure and designating the things necessary to be done before the proceeding shall be instituted, among other things provides:

"The case shall be tried by the court without the intervention of a jury. If the court, upon hearing, be satisfied that less than a majority of the resident voters of the territory sought to be annexed or stricken off have remonstrated against the proposed extension or reduction, and that the proposed extension or reduction of the limits of the city, as the case may be, will be for the interest of the city and will cause no material injury to the owners of real estate in the limits of the proposed extension or reduction, it shall so find and the proposed extension or reduction shall be decreed or adjudged. But if the court shall find that a majority or more of the resident voters in the territory to be affected, or the owner or owners of said property, if there be no resident voters, remonstrated against such change, and that said change will cause material injury to the owners of real estate in the limits of the proposed extension or reduction, it shall so find, and said extension or reduction shall be denied."

Obviously the language of the statute grants a broad discretion to the courts in determining whether under all the facts a proposed annexation should be made. It is in evidence that at least ninety per cent of the resi-

dent voters of the territory proposed to be annexed are opposed to it, and have in one way or another entered their protest against it. Under these conditions, in the absence of some controlling reason why the annexation as proposed is vitally essential to the welfare of the city, it would be an abuse of discretion to adjudge it.

The line between Kentucky and Ohio is at low water mark on the north bank of the river, and the proposed annexation begins at a point on the north bank and runs west of south so as to connect with, on the south bank, what we understand to be the northeast limits of the city as at present defined, and runs to a point on the Kentucky side about to the foot of the hill south or southwest of the present town, thence running northwest, and then west, and then south, and then east, and then northeast until it crosses the river again south or southeast of the present city, and thence northwest down the river to the beginning point, and embracing a territory of from sixteen hundred to eighteen hundred acres—possibly more.

A part of the territory so embraced is from two to two and a half miles from the present city limits, and a considerable part of it is farming lands, and much of it woodland. The evidence discloses that on the table land at the top of the hill in the proposed annexation there is some suitable property for town lots, and there is embraced within the territory two or three small settlements where there are a few houses in a group; but, on the other hand, a part of the territory is very rough, and wholly unfitted for town purposes.

There is some dispute in the evidence as to the area of the proposed annexation, but we are convinced from the evidence and the map on file before us that it embraces at least an acreage equal to what we have stated, and judging from the area on the map designated as the present city, and the area outlined as the proposed annexation, we estimate, without a calculation, that the territory proposed to be annexed is easily from eight to ten miles as large as the present city limits.

The city of Russell appears to be a prosperous railroad town, but we do not gather from the evidence that there is now, or will probably be in the near future, any necessity for such an ambitious scheme of annexation. It is true the city cannot extend north because of the river, and it appears to be impracticable for it to extend east because of the extensive railroad yards, and the evidence tends to show that because the cliffs are so near

to the river at the southwest it cannot practicably be extended in that direction.

The evidence tends to show that the city is already in debt, and is collecting taxes up to the limit, and it appears to us to be under all these circumstances wholly impracticable for such a municipality, in such a situation, with no more immediate prospect of extensive growth than it has, to undertake to annex territory upon which might be erected a city of twenty-five or thirty thousand inhabitants. And especially is this true when it is reasonably apparent that it cannot adequately either police this vast territory, build streets through it, or furnish to its inhabitants adequate light, water or other things which it would be its duty to furnish.

Upon a consideration of the whole case we have been unable to reach the conclusion that the proposed annexation would be of any benefit to the city or to the residents of this vast territory. It would impose upon the municipality duties and obligations which it could not probably meet, and would impose upon the residents of the proposed annexed territory burdens for which they would receive no adequate return.

As said by this court in the annexation case of Latonia v. Hopkins, 104 Ky. 419:

> "In our opinion it would not be a benefit to the town itself to annex such a vast scope of territory, as it would impose upon the municipality the Herculean task of providing streets, sidewalks, light, and other necessities of municipal existence; and there can be no doubt but that the annexation would result in very serious injury to the people owning the bulk of this territory, as it would subject them to municipal taxation without receiving any corresponding benefit or advantage therefrom."

That a reasonable annexation of territory to the city of Russell might be of advantage may be readily understood, but we are positive that the annexation of this enormous area is wholly unnecessary and would result in advantage to no one, but would on the contrary impose upon the municipality such obligations as might be seriously embarrassing.

It results from what we have said that the chancellor below abused his discretion in adjudging this annexation, and for that reason the judgment is reversed with directions to dismiss the proceeding.