## Adams et al. v. City of Jeffersontown.

(Decided October 13, 1931.)

WALLACE A. McKAY for appellants.

FRANK C. GREENE for appellee.

HUBBARD & HUBBARD amicus curiæ.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

The city of Jeffersontown is one of the oldest and smallest among the municipalities of the state. It belongs to the sixth class. In 1925 the city annexed a small amount of territory within a reasonable radius of the city hall. Coincident with the enlargement of its boundaries, the city began and completed several public improvements, and it was making progress. A new board of council was elected in November, 1927, and in February, 1929, an ordinance was enacted for the purpose of striking from the city the territory that had been annexed in 1925. Kentucky Statutes, sec. 3664. An action was filed by George R. Adams and eight associates in the nature of a remonstrance against the proposed reduction of the city limits and to prevent its consummation. Ky. Stats., sec. 3665. The case was fully prepared, and the chancellor dismissed the remonstrance.

The plaintiffs have prosecuted an appeal from the judgment, as they are authorized by the statute to do.

The present city attorney has filed a brief in which he states that, at the regular election for town officers in November, 1929, a new board of council was elected, pledged to the policy of maintaining the territorial integrity of the city. He asks a reversal of the judgment to the end that the execution of the ordinance reducing the boundary may be restrained. He fortifies his position by a very cogent statement of the reasons by which he is actuated. The former city attorney has been permitted to file a brief as amicus curiæ, in which he vigorously insists that the judgment of the circuit court should be upheld.

The statute provides (section 3665):

"If the court be satisfied, upon the hearing, that less than seventy-five per cent. (75%) of the freeholders of the territory to be annexed or stricken off have remonstrated, and that the adding or striking off of such territory to the town will be for its interest, and will cause no material injury to the persons owning real estate in the territory sought to be annexed or stricken off, it shall so find, and said annexation or reduction shall be approved."

The same or similar statutes have been construed by this court in numerous cases. Langhan v. City of Louisville, 186 Ky. 438, 216 S. W. 1082; Collins v. Town of Crittenden, 70 S. W. 183, 24 Ky. Law Rep. 899; Summers v. Town of Elsmere, 55 S. W. 682, 21 Ky. Law Rep. 1525; Preston v. Town of Paintsville, 158 Ky. 700, 166 S. W. 188; Town of Latonia v. Hopkins, 104 Ky. 419, 47 S. W. 248, 20 Ky. Law Rep. 620; Town of Fredonia v. Rice et al., 115 Ky. 443, 73 S. W. 1125, 24 Ky. Law Rep. 2331; Lewis v. Town of Brandenburg, 105 Ky. 14, 47 S. W. 862, 48 S. W. 978, 20 Ky. Law Rep. 1011; Hardesty v. Mt. Eden, 86 S. W. 687, 27 Ky. Law Rep. 745; Carpenter v. Town of Central Covington, 119 Ky. 785, 81 S. W. 919, 26 Ky. Law Rep. 430; Town of Williamstown v. Mathews, 103 Ky. 121, 44 S. W. 387, 19 Ky. Law Rep. 1766; Yancey v. Town of Fairview, 66 S. W. 636, 23 Ky. Law Rep. 2087; Town of Bloomfield v. Muir, 221 Ky. 815, 299 S. W. 976.

If 75 per cent. or more of the freeholders protest against the proposed change, the burden is upon the town

to show the existence of the other conditions to warrant proceeding further in the face of the protest. Town of Bloomfield v. Muir, supra. And, even after approval by the court, additional action by the legislative board is necessary to complete the change. Ky. Stats., sec. 3666; Turner v. Kelly, 217 Ky. 773, 290 S. W. 711.

It will be observed that the annexation and detachment of the territory of a municipal corporation are governed by the same considerations. The power of the court to interpose in either event is conditioned upon a finding, when less than 75 per cent. of the freeholders have remonstrated, (a) that the proposed alteration of the boundary will be for the best interest of the town, and (b) that it will cause no material injury to the persons owning real estate in the portion of the city affected by the proposed change.

If the remonstrance is signed by less than 75 per cent. of the free holders, the burden is upon them to show the conditions that entitle them to the relief requested.

It is not contended that 75 per cent. of the freeholders in this instance joined in the remonstrance, but it is insisted that they manifested clearly that the proposed detachment of territory was against the interest of the town, and that it would materially injure the persons owning property in the part of the city to be detached.

The evidence is quite voluminous, and no good purpose would be served by a summary of it. It is sufficient to say that it was proven that the proposed exclusion of territory would adversely affect the welfare of the town, and seriously injure persons owning real estate therein. Debts incurred by the town as now constituted would be cast on the portion remaining after the excision. The rate of fire insurance would be materially increased on those taken out of the town. It would leave those in the excluded territory without equal police protection. The income of the town would be curtailed until it would be very difficult for it to perform its functions. The testimony for the remonstrants conduces to show that the values of real estate would be depressed by removing it from the corporate limits. There is some testimony, however, to the contrary. The excision of the territory described in the ordinance would put the fire department and city hall near the edge of the town, and put outside the city limits property situated only a block away from those improvements. Any regulations respecting nuisances or the keeping of stock in the city could not be

enforced outside its limits, although the conditions might be just as offensive to the citizens as though actually within the city. The new lighting system could not be maintained on the revenue from the city reduced as proposed. The territory proposed to be severed is properly town property divided into squares by intersecting streets and subdivided into lots suitable for building purposes. Indeed, many substantial dwellings have been erected in that part of the town. The vacant lots are really needed to take care of the town's normal and natural growth. Whilst the court is reluctant to reverse a ruling of the circuit court upon a question of fact, yet the peculiar facts of this case, and the cogent circumstances stated, constrain the court to the conclusion that the chancellor erred in not enjoining the enforcement of the ordinance designed to reduce the size of the city. It was determined in 1925 that the same territory should be annexed to the city, and nothing developed in the meantime to warrant a reversal of that action. The preponderance of the evidence sustains the contentions of the remonstrants, and a study of the record produces a clear conviction that the relief sought by the appellants should be granted. In such cases, this court renders the judgment that accords with its own view of the rights of the parties. Ford v. Ford, 233 Ky. 673, 26 S. W. (2d) 551, 554; Walker v. Walker, 228 Ky. 357, 15 S. W. (2d) 298; Turner v. Hammock, 229 Ky. 836, 18 S. W. (2d) 285; Gilley v. City of Russell, 212 Ky. 798, 280 S. W. 101.

The judgment is reversed for proceedings not inconsistent with this opinion.