## City of Russell v. Ironton-Russell Bridge Co.

(Decided May 6, 1932.)

(As Modified on Denial of Rehearing June 16, 1923.)

308

JOHN T. DIEDERICH for appellant.
A. V. POLLOCK and A. R. JOHNSON for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

By appropriate steps the city of Russell, hereinafter called the city, sought to make an extension of its territorial limits, a remonstrance was filed by the Ironton-Russell Bridge Company, hereinafter called the Bridge Co., and the city, having been unsuccessful, has appealed. The territory proposed to be annexed is a part of the territory sought to be annexed in Gilley et al. v. City of Russell, 212 Ky. 798, 280 S. W. 101, and much said there is applicable here, nevertheless we have re-examined and reconsidered the question.

Russell is a fourth class city, it was proceeding under section 3483, Ky. Stats., and the steps taken were in strict accord with the statute.

The strip sought to be annexed is thus described:
"Beginning at a point at low water in the Ohio River at the north corner of Lot No. 13, of the plat of Rice & Kidds addition to Russell in Greenup County, Kentucky, dated August, 1909, and recorded in Book 39, last page, said point being in the west line of Rice and Kidds purchase and the west side line of Vernon Street produced to low water line, and also the west corporate line of the City of

Russell thence southeasterly along and with low water line of the Ohio River and the present corporation line of the City of Russell, Kentucky, 4,750 feet more or less to the mouth of Bear Run at the east corporation line of the city of Russell, Kentucky, thence crossing the Ohio River N 60 W 1020 feet more or less to low water line of said Ohio River on the Ohio side of same; thence northwesterly along and with low water line on the Ohio side of the river 4,750 feet; thence S 60 W 900 feet more or less to the point of beginning.''

In other words, the city is seeking to annex that part of the Ohio river which lies immediately in front of it. The present boundary of the city as fixed by chapter 591 of Loc. & Priv. Acts 1873-74 is:

"Beginning on the Ohio River at the mouth of a creek, at lower end of Carner's Grove; thence south sixty-two degrees west to the top of the ridge of the river hill; thence in a southern direction along the top of said ridge and down the hill to Bear Run; thence down the meanderings of same to the Ohio River; thence down the Ohio river to the place of beginning.''

The contention of the city is that as the territory between the low-water mark on the Kentucky shore and the thread of the stream is, so the city says, already within the corporate limits of the city of Russell by reason of the description in the act of 1874, which, it argues, is for all practical purposes exactly ''on all fours'' with the act construed in the Covington Bridge Cases (City of Covington v. State Tax Com. et al., 231 Ky. 606, 21 S. W. (2d) 1010), as applied to the northern or Ohio river boundary of said city, and, it further appearing that the Bridge Co. is, so the city contends, only a trespasser on property owned by the state of Kentucky and Greenup county, that it is therefore, as the city views it, not an ''owner'' of real estate within the purview of section 3483, Ky. Stats., and, consequently, as the city insists, not qualified under the statute to make any objections.

We are not called on in this case to say what is the northern boundary of the city, and hence we are expressing no opinion on that subject. Admitting, for

the sake of argument only, that the city is right, what difference does it make?

The Bridge Co. owns this bridge spanning the Ohio river. The bridge is either real or personal property. If personal property, it is in its entirety taxable at the site of the chief office of the Bridge Co., which is in Russell, Ky. From the maps in this record it appears that something like 600 or 700 feet of this bridge and the approach to it is south of the low-water mark on the Kentucky side of the river, and the Bridge Co. admits that is real estate, and so lists it, and the Bridge Co. is so taxed thereon by the city of Russell. The property is so listed and taxed, and the city tax imposed and collected thereon, in 1930, was $984. As one walks across this bridge from Russell over to Ironton, Ohio, a point is finally reached, where the northern boundary of the city of Russell is crossed, whether this is at the point where the bridge crosses the low-water mark on the Kentucky side of the river or at the point where it crosses the thread of the stream in the river, makes no difference and we express no opinion regarding the location of that point, but until that point is reached this bridge is admittedly real property, and, as there is no difference in the nature of the bridge north of that point from that south of that point, wherever that point may be, and as the Bridge Co. owns all the bridge, it follows the Bridge Co. owns real estate beyond the present limits of Russell and within the territory proposed to be annexed, and that it is qualified to oppose this annexation as the "owner of real estate in the limits of the proposed extension."

The city bottoms its contention upon this which it alleges in its brief has been adopted as the rule in Kentucky: "That the ability of the city to impose, and the liability of property to be compelled to pay city taxes is not enough to prevent a proposed annexation." We shall examine the authorities cited to see if such a rule has been adopted.

In Summers et al. v. Town of Elsmere, 55 S. W. 682, 21 Ky. Law Rep. 1525, there had been a town site platted and laid out on both sides of the Q. & C. Railway. There were four principal streets leading through this town site to the Lexington turnpike. The territory south of the railroad had been incorporated as the town

of Elsmere, and thereafter it undertook to annex the territory north of the railway which was called "South Erlanger," and was a part of this same town site and used these same streets. To reach the Lexington pike the inhabitants of Elsmere had to pass through South Erlanger, and would be compelled to improve these streets to reach the pike. The drainage of South Erlanger passed through Elsmere, and the town of Elsmere would have to take care of that. The property in South Erlanger would benefit thereby and should help pay therefor.

The remonstrants there had but one defense, and that was they did not want to pay city taxes, and under that state of facts this court held that defense insufficient to prevent the annexation.

In Yancey et al. v. Town of Fairview, 66 S. W. 636, 23 Ky. Law Rep. 2087, the proof showed that every lot within the boundary of the town, as it existed when the ordinance of annexation was enacted, had been built upon and was occupied but three, and that less than 75 per cent. of the freeholders in the territory proposed to be annexed had remonstrated, the town's only chance to grow was by annexing more territory, and we held the payment of city taxes was not sufficient, under those circumstances, to prevent the annexation.

In City of Ludlow v. Ludlow et al., 186 Ky. 246, 216 S. W. 596, the city proposed to annex a tract of land 533 feet wide and 1,255 feet long fronting on the Ludlow highway, surrounded by the city of Ludlow on the north and west and by the city of Covington upon the south and east. The opinion sets out the advantages that would accrue to the parties by the annexation, and held the enhanced valuation would more than offset the amount of taxes.

Again in the City of Georgetown v. Pullen, 187 Ky. 697, 220 S. W. 733, after enumerating the advantages that would accrue to the parties by the annexation, it was held that the burdens that would follow the annexation such as city taxes and city assessments for streets, sidewalks, etc., were not enough to prevent the annexation.

Thus we see that in each of these cases there was considered by the court the advantages to the parties which would result from the proposed annexation, and

in none of them was the sole question that of power of
the city to impose, and liability of the property to pay,
city taxes. Here we have a different situation. For
obvious reasons there can never be in the territory
proposed to be annexed any house erected, no street,
sidewalk, or sewer can ever be constructed, no child
will ever live in this district that can enjoy the school
facilities of the city, and all the city can offer the
Bridge Co. in return for the tax burden it may impose
upon it will be the following advantages which the city
claims the Bridge Co. will get:

Fire Protection.

The Bridge Co. has installed upon this bridge a
2½ inch water line connected with and served by the
water system of the city of Ironton. Thus it appears
the Bridge Co. has arranged for fire protection, and it
appears this arrangement is adequate for that purpose,
and during the eleven years this bridge has been in use
the fire fighting facilities of the city of Russell have
been called onto this bridge but once, and then it was
called to extinguish a fire prevailing in some trash the
city of Russell or its inhabitants had dumped in the
river beneath it, and which had in some way become
ignited. It is the duty of the city of Russell now in
return for the taxes it now imposes upon a portion of
this bridge to extend the services of its fire department
to that portion, and this record does not disclose any
need for the further extension of them or that any ap-
preciable benefit would result to the Bridge Co. from
such extension.

Police Protection.

The city contends the Bridge Co. needs police pro-
tection on its bridge, and that its policemen have been
called upon this bridge from time to time, for the ar-
rest of misdemeanants, the greatest number of calls
that any witness testifies about is one or two calls a
month, but we must remember a portion of this bridge
is already within the city, and the city is collecting
taxes thereon, and is obliged to extend its police pro-
tection to that portion of the bridge that is within the
city. The only argument the city can make that has
any persuasive force is that the field of operations of
the police of the city of Ironton comes to an end at the
point on the bridge where it is crossed by the southern
boundary of that city, and the field of operations of the

Russell police is limited to the confines of the city of Russell and thus there is upon this bridge a sort of "No man's land," but that does not mean this "No man's land," is outside all police protection. It is within the sphere of the activities of the sheriff of Greenup county, and we do not feel that this "No man's land" is or can by any means become such a haven for the lawless as to require the annexation of this territory to the city of Russell for its protection. A like argument could be made as to each highway leading out of Russell, and if this contention should be sustained, then the last barrier to the extension of city limits would be swept away and there would be no end to the additions it might make to and include within its boundaries.

The provision of the statute is that the court shall decree that the proposed annexation shall be made if it will be for the interest of the city and will cause no material injury to the owners of real estate within the proposed extension. Those conditions are not shown to exist. The statute goes further and provides that if the court shall find *that said change will cause material injury to the owners of real estate in the limits of the proposed extension or reduction, it shall so find, and said extension or reduction shall be denied.*

How can property in a proposed addition be injured by including it within a city is a pertinent question, and the answer is that if the property in the proposed addition is not adapted and gives no promise of desirability for use as sites for residences, factories, mercantile buildings, warehouses, or other city uses, and certainly this is not so now and can never be so, then its inclusion within the city and its subjection to the power of the city, to impose upon it city taxes would be an injury to it, and as common sense would tell us, that its subjection to such taxes would reduce the market value of property so included, then certainly such inclusion would be a material injury to it. All of these things exist here, hence we hold that in view of the inconsiderable, if any, advantages that could result to the city by the inclusion of this property in it, and the glaringly inadequate, if any, compensating advantages that could result to this property by the inclusion of it, that its inclusion and the subjection of it to city taxation would be a material injury to it, and hence the right of the city to make this proposed extension of its boundaries is denied. This is not a new doctrine in

314

this state and is in harmony with our ruling in Town of Latonia v. Hopkins, 104 Ky. 419, 47 S. W. 248, 20 Ky. Law Rep. 620, where we held, where owners object, sparsely settled outlying territory which would receive no substantial advantage from municipal government should not be annexed.

Cheaney v. Hooser, 48 Ky. (9 B. Mon.) 330, particularly page 347, is to same effect. See, also, 19 R. C. L. p. 735, sec. 41, and note in 62 A. L. R. 1021.

Other states hold that lands which give no promise of ever becoming valuable for corporation or other town purposes should not be annexed. See 43 C. J. p. 116, and these cases cited under note 84: Vestel v. Little Rock, 54 Ark. 321, 329, 15 S. W. 891, 16 S. W. 291, 11 L. R. A. 778; Town of Latonia v. Hopkins, 104 Ky. 419, 47 S. W. 248, 20 Ky. Law Rep. 620; Village of Hartington v. Luge, 33 Neb. 623, 50 N. W. 957; Gootschalk v. Becher, 32 Neb. 653, 49 N. W. 715.

The finding of the trial court being in harmony herewith, it is affirmed.

The whole court sitting.

Ratliff, J., dissenting.