## City of Louisville v. Sullivan et al.

March 22, 1946.

Lawrence S. Poston and Richard H. Hill for appellant.

Robert E. Hogan and Harry L. Hargadon for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER
—Reversing.

The case relates to the annexation to Louisville of a small area south of the city, known as "Southlawn." It lies between the old Third Street Road and Third Street extended. In 1941 an ordinance was enacted taking in that area and two other small adjacent subdivisions, known as McArthur Fields and The Meadows. A petition was filed by three owners of property in Southlawn as a representative committee, opposing the annexation of that area. We reversed a judgment rendered on demurrer which held that they were without legal authority to maintain the action. Sullivan v. City of Louisville, 295 Ky. 68, 173 S. W. 2d 981. Upon the trial the two conditions prescribed by the statute, KRS 81.110, were submitted to a jury which found in favor of the remonstrants. The city appeals and seeks a reversal upon the grounds (1) the verdict is not sustained by sufficient evidence; and (2) error in rejecting competent evidence.

We regret that the appellees have felt such confidence in their position that they have not filed a brief. We, therefore, accept the statements in the appellant's brief as the facts disclosed by the record. Rule V, paragraph 2; Skaggs v. Ohio Valley Rock Asphalt Company, 292 Ky. 758, 166 S. W. 2d 1005.

The Southlawn area and The Meadows subdivision were developed by Kenwood Homes, Inc., and the ordinance of annexation seems to have been enacted at the instance and request of the promoters. The Meadows subdivision and McArthur Fields subdivision were taken into the city without protest.

There are 116 homes in the Southlawn subdivision. It is pretty well built up and is essentially a part of the city, being practically surrounded by its boundary. Other lots are owned by Kenwood Homes, Incorporated. Less than 75% of the property owners filed the petition of remonstrance. Therefore, under the statute the annexation should be made if (1) it will be for the interest of the city, and (2) "will cause no manifest injury to the persons owning real estate in the territory." KRS 81.110. The court submitted these two conditions to the jury. It should have found for the annexation unless it had been proved that the annexation would not be for the interest of the city and that it would cause manifest injury to the property owners. Yancey v. Town of Fairview, 66 S. W. 636, 23 Ky. Law Rep. 2087; City of Louisville v. Brown, Ky., 119 S. W. 1196; Langhan v. City of Louisville, 186 Ky. 438, 216 S. W. 1082; Adams v. City of Jeffersontown, 240 Ky. 482, 42 S. W. 2d 704. The court correctly defined for the jury the latter phrase as meaning "not some injury to some of such property holders by the annexation, but manifest injury to the property holders as a class or the majority of them." City of Louisville v. Brown, 119 S. W. 1197. The question we have before us is whether the evidence is so insufficient as a matter of law that it failed to do that.

Pending the consummation of annexation, it appears that an informal agreement between the promoters of this subdivision and representatives of the city resulted in the extension of the city water service and the connection with the city sewerage system. By this agreement the residents were to pay $1.50 a month to the city for the sewer service. And the cost of the water service was approximately 25% more than the cost to the citizens of the city. A contract was prepared to cover these matters but it was never executed. It appears that the monthly sums for the sewerage service were paid by the property owners, or some of them, to a Trust Company which had financed the purchase and construction of the homes, but it was never received into the city treasury. On these two items we think it is certain that no injury would result to the property holders to have these services made permanent and to have the water rates reduced and the sewer service fee abolished. It is to the interest of the city at least to stop rendering free sewerage service.

There are no storm or drainage sewers in the area so

that considerable water stands in the streets and open ditches. It eventually finds its way into the city sewerage system, but when stagnated the condition becomes a menace to the health of the inhabitants of the area and as well to the neighbors within the present city limits. It appears that the general scheme and plan of the city's drainage system has provided for relief of this condition. Can it be said in respect to this item that it is not to the interest and general welfare of all that it should be remedied through annexation?

The streets are of a temporary type, with high maintenance cost. They are now full of holes. Annexation would throw the expense of repairs and maintenance upon the city. If reconstructed permanently at the cost of the property holders, it would enhance the value of their property.

The streets are not lighted. Obviously, city lights would not be any injury to the community.

The territory is policed both by county and city patrolmen. The few policemen of the county, who cover a large area, do not afford the protection which would be given by city police within city limits. Their service now is apparently irregular and upon calls in emergencies, which are answered without any obligation to do so.

The same condition exists in the matter of fire protection. There have been a number of fires in the area, a few buildings and several of dried vegetation. There is one city hydrant in the area which cost the inhabitants $20 a year. Sometimes there has been no water supply for it because of the cutting off of water for failure to pay. Southlawn has been dependent upon the graciousness of the city whose fire department has responded to the call as a matter of good neighborship. Proper and efficient fire protection calls for free hydrants in this area. A continuance of this gratuitous service is, at least, problematical.

Fire insurance rates are higher than those within the city limits. Electricity service for an average home costs $8.13 more per year. Telephone service costs about $6 a year or more. The people pay a minimum of 22 cents per 1000 gallons of water monthly more than do the inhabitants of the city. There is also an installation charge of $40 made when a building is constructed, which

is not made in the city limits. Each home owner pays $12 a year for garbage service, which would be saved by annexation.

The children of Southlawn now attend a county school located from one to two miles away. They are transported free of cost by a school bus. The City Board of Education has acquired a building lot in McArthur Fields subdivision and purposes to erect an adequate building, thus placing a school practically in this area. Until that can be done, the children may attend a city school located at Beechmont, which, although some three miles away, is accessible by street car. In this matter there seems to be nothing more than a balance of benefit and burden.

There are other city facilities and benefits enjoyed by the inhabitants of this neighborhood which cannot be regarded as direct or of a class to be considered in applying the statutory condition. See City of Lexington v. Rankin, 278 Ky. 388, 128 S. W. 2d 710. All these things doubtless have raised the question by the people as to why they should not protest against annexation and the consequent necessity of paying city taxes. The additional taxes would be $1.65 on the $100 of valuation, made up of 3½ cents additional for school purposes, and $1.61½ for general purposes. Upon a valuation of $3,500, the difference would be $57.75 per year. From a purely monetary standpoint, it would seem that this amount would be saved by the difference in charges for public utilities and other services described. But the necessity of paying city taxes is not the character of injury contemplated by the annexation statutes, considering the benefits received. City of Ludlow v. Ludlow, 186 Ky. 246, 216 S. W. 596; City of Georgetown v. Pullen, 187 Ky. 697, 220 S. W. 733.

While there are opinions of witnesses both pro and con with respect to the conditions described, we cannot escape the conclusion that considering the factual evidence the protestants did not sustain the grounds of their opposition as a matter of law; hence that the court should have directed a verdict for the city and entered a judgment of annexation.

The judgment is reversed.