**S. S. LIKINS et al., Appellants,**

v.

**CITY OF CLARKSON, Kentucky, Appellee.**

Court of Appeals of Kentucky.

June 24, 1955.

Delma L. Mauzey, Leitchfield, for appellants.

R. H. Cannon, Leitchfield, Faurest & Montgomery, Elizabethtown, for appellee.

STANLEY, Commissioner.

Clarkson, a town of the sixth class in Grayson County, duly enacted an ordinance to annex certain adjacent territory. More than 75% of the freeholders of the territory protested the annexation. The circuit court adjudged annexation and the protestants appeal.

The annexing authority of a sixth class town is KRS 81.240. Paragraph (2) provides a review by the circuit court without the intervention of a jury. The court is limited to ascertaining (1) the percentage of all of the freeholders who have remonstrated, and if that be 75% or more (as is conceded to be in the present case), then

(2) whether or not failure to annex the territory will materially retard the prosperity (a) of the town and (b) of the owners and inhabitants thereof. KRS 81.110(1, 2). In such a case the burden is on the town to prove that failure to annex the area will result in these consequences. Town of Bloomfield v. Muir, 221 Ky. 815, 299 S.W. 976.

■ The term "retard prosperity" means to delay progress of the community as "gauged by its attainments in the many fields affecting the welfare of its inhabitants and the owners of property comprising its territorial limits. Thus economic, religious, social, educational, safety, and sanitary conditions are factors to be taken into consideration in determining the prosperity of a community as a whole." Loeffler v. City of Louisville, 308 Ky. 629, 215 S.W.2d 535, 536. In determining the question, the court views the situation as a whole—"the city as an organized community and the suburban property as an unorganized community." Masonic Widows and Orphans Home and Infirmary v. City of Louisville, 309 Ky. 532, 217 S.W.2d 815, 819. It is apparent that each case of annexation is to be decided according to its own peculiar conditions and facts.

The evidence introduced by the town may be summarized as follows: There has been no extension of its boundaries since it was incorporated in 1908. The town lies along both sides of U. S. highway No. 62 about five miles east of the county seat. Two state highways connect with No. 62 in the town. The new territory extends out along all of these roads. The town has a bank, several stores and the usual facilities of a small town. There is a large beehive factory nearby which does business through the town. The 1950 census shows the population to have been about 400, but 23 new residences have since been built in the town limits and the population is now estimated to be around 600. The annexed area contains about 200 people, 49 residences (23 of which are new), a garage, a filling station, a chinchilla ranch, an electric substation, and lots and land suitable for other buildings. The town has no water system at present but a survey shows that with the annexation it would be able to establish one. There would be better fire protection and insurance rates would be reduced accordingly. The town maintains its street lights, which would be extended. The present electric rates in town are lower than outside the limits. While neither the old town nor the new area has the density of population ordinarily found in a city, it is like that common to other rural communities and small towns.

■ The greater objections of the remonstrants are that the area embraces farming lands and they would have to pay town taxes without additional benefits. It is contended also that there are many building lots in the present limits, but rebuttal evidence is to the effect that these are narrow and generally are used in connection with the homes of the owners thereof. The farming lands are not greatly disproportionate to the suitable building lots of an acre or so along the three highways, and such lots are now being sold and occupied from time to time. The overall character of the property and its adaptability or capacity of being absorbed into a town of the size and general character of this one is to be regarded. Masonic Widows and Orphans Home v. City of Louisville, supra. In the same case it is held that the imposition of taxes is not the kind of injury or detriment contemplated by annexation statutes.

■■ While more witnesses testified for remonstrants, giving expressions of their own views and opinions, than testified for the town, it is to be remembered that judicial decisions are reached by weighing the probative value of evidence rather than counting the witnesses. It has been frequently said in cases of annexation, as in all other cases tried in equity, that this court decides the issues according to its own view of the evidence, resolving any doubt in favor of the judgment. Under the present Rules of Procedure the finding of fact of

the circuit court will "not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01. In this case the witnesses were heard orally, and the special judge who tried it resides in the adjoining county, so we are very sure he has a full knowledge of the geographical conditions. Even were the evidence weighed and regarded by us wholly independent of the trial court's decision instead of under present rules, we would reach the same conclusion, namely, that the judgment is and should be

Affirmed.