R. A. MITCHELL et al., Appellants,

v.

CENTRAL CITY, Muhlenberg County, Kentucky, Appellee.

Court of Appeals of Kentucky.

Feb. 16, 1962.

Woodward, Bartlett & McCarroll, Owensboro, for appellants.

Jarvis & Cornette, W. D. Bratcher, Greenville, for appellee.

CULLEN, Commissioner.

The appeal is by remonstrating property owners from a judgment upholding an annexation of territory by Central City, a city of the fourth class.

The territory in question embraces around 53 acres lying north of the present city limits. It is bounded on the west and east by county roads, and a short distance south of the northern boundary of the territory there is a third county road, running east and west, which connects the other two roads. Along these three roads within the territory to be annexed there are 47 residences, many of which have been constructed within the past five years.

One remonstrant owns a tract of five acres in the territory which he uses for gardening or truck farming. Another owns a tract of seven acres, upon which he raises hogs. The remainder of the territory (exclusive of the residences around the perimeter) is undeveloped and unoccupied. It contains some hills and gullies which in the opinion of some of the witnesses makes it unsuitable for development and in the opinion of others does not.

More than a majority of the resident voters in the territory remonstrated against the annexation. In that situation, under the peculiar statute governing annexation by fourth-class cities, KRS 81.220, the sole issue to be determined by the court was whether or not the annexation would "cause material injury to the owners of real estate in the limits of the proposed extension." See Adkins v. City of Pineville, Ky., 271 S.W.2d 625; City of Ludlow v. Ludlow, 186 Ky. 246, 216 S.W. 596.

The injuries which the remonstrants claim they will suffer consist of (1) general city taxes; (2) assessments for street im-

provements; (3) taxes or assessments for sewers; (4) possible loss of school bus service and mail delivery; (5) prohibition against use of land for animal husbandry; and (6) subjection to authority of city officials and loss of freedom.

The benefits which the city claims will be conferred on the territory are (1) fire protection; (2) police protection; (3) garbage collection; (4) street lights; (5) street maintenance; (6) planning and zoning protection; (7) reduction in fire insurance rates; (8) eventual inclusion in a sewerage system.

In support of their claims of injuries the remonstrants first argue that they have good roads and they will be injured by assessments for new road construction, curbs and sidewalks. In our opinion it is not reasonably to be anticipated that the city would undertake to reconstruct the roads as long as the existing surface is satisfactory or that curbs and sidewalks would be constructed until such time as the uses of the property make it necessary. When these things become necessary the property owners will receive the benefits, so it cannot be said that they will suffer material injury by being compelled to pay for the improvements.

As concerns sewerage, the prevailing method of financing is through service fees. The property owners will not be compelled to pay the fees until the service is available, so there can be no source of injury there.

The annexation would not affect school district boundaries and the evidence was that it would not affect mail delivery.

With regard to the use of land for animal husbandry, some possible detriment might be suffered by the one owner who now is raising hogs and by another who raised some livestock years ago on his tract, but it seems likely that the other 45 present homeowners would not consider it an injury for the hogs to be removed from the land adjoining their residences.

This leaves as possible injuries the subjection to general city taxes and to the control of city government. Offsetting these are the general benefits in the way of police protection, fire protection, garbage collection, street lights, street maintenance, planning and zoning, and reduction of fire insurance rates. If the territory in question may be considered to be urban in nature and adaptable to municipal uses it is clear that the benefits to be derived from the annexation will not be so disproportionately low in comparison to the burdens as to constitute a "material injury." See City of Louisville v. Kraft, Ky., 297 S.W.2d 39; City of Prestonsburg v. Conn, Ky., 317 S.W.2d 484.

In the final analysis the issue in this case boils down to the question of whether or not the territory sought to be annexed is urban in nature and adaptable to municipal uses. We think it is clear beyond question that the land around the perimeter of the territory, where there are 47 residences, is urban in nature. On the other hand, the area in the center of the territory is not now of an urban nature and at least as to part of it there appears to be no immediate prospect of its being devoted to municipal uses. This raises the question of whether the situation is such as to warrant taking the nonurban along with the urban.

The rule is that the question of material injury is to be determined from the standpoint of the property holders as a class or the majority of them, and not with reference to individual owners. City of Louisville v. Sullivan, 302 Ky. 86, 193 S.W. 2d 1017. The view to be taken is of the entire area and not the separate parcels of real estate in isolation. Masonic Widows and Orphans Home and Infirmary v. City of Louisville, 309 Ky. 532, 217 S.W.2d 815.

Here the overwhelming majority of the owners occupy land of an urban character. Their land completely surrounds the part of the territory that is used for agriculture or is undeveloped. The distance across

the latter part of the territory to the fully developed area on the north side is short. Practical difficulties would arise if the city were to attempt to annex the developed area without taking the remainder. The owners of a major portion of the undeveloped area have not remonstrated against the annexation. As long as the area remains undeveloped the burden of city taxes upon it will be small. The geography of the territory is such that it is reasonable to classify it as a unit. Under all of these circumstances it is our opinion that the entire territory was properly annexable.

The judgment is affirmed.