**CITY OF GREENVILLE, Appellant,**

**v.**

**Wilbert GOSSETT et al., Appellees.**

Court of Appeals of Kentucky.

March 16, 1962.

Dan Cornette, Jarvis & Cornette, Greenville, for appellant.

Otto Martin, Hartford, for appellees.

MONTGOMERY, Judge.

The City of Greenville, a fourth-class city, proposed to extend its boundaries to include the Boggess Heights and Cherry Heights subdivisions. A majority of the resident voters of the area remonstrated. The circuit court held that material injury would result to the owners of real estate within the limits of the proposed extension and denied the annexation. This presents the only question. KRS 81.220. Mitchell v. City of Central City, Ky., 354 S.W.2d 281.

The present boundaries of the City contain an area of 873.57 acres and an estimated 3,340 people. The proposed extension includes 174.06 acres and about 225

people. At the time of the trial, there were approximately seventy houses and five places of business in the area proposed to be annexed.

The two subdivisions sought to be annexed were opened in 1946 and 1953 and are contiguous to the western boundaries of the city. About two-thirds of the area has been laid off into streets and town lots. Some farming was done on a few tracts of land containing five to fifteen acres. The owner of a fifteen-acre tract had sold two building lots containing less than an acre each for $1,000 and $500, respectively.

The City of Greenville's fire department has two full-time firemen and sixteen volunteers. It is equipped with two trucks. Its police department has five policemen and is equipped with a patrol car and a motorcycle. The City operates and maintains a library and a hospital. Its municipal office building is shared with the County Health Department. It is served by a municipal water system and independent school district, both of which serve the proposed annex, with no rate or tax differential. The City has a planning and zoning ordinance.

The municipal water system was financed by a revenue bond issue. The City has no voted bonded indebtedness. Negotiations were under way at the time of the trial for the construction of a sewer system and sewage disposal plant to be financed by the sale of revenue bonds plus a federal grant of $55,000. Additional police and fire protection was planned in the event of annexation.

Appellees claim that they would be materially injured by the annexation of the territory containing their property because they would be subject to municipal property, occupational, and poll taxes, street and sidewalk assessments, and planning and zoning regulations. They also feel that the City might exercise its power to provide group insurance, public off-street parking, and licensing of motor vehicles.

They say that the City would be unable to provide police and fire protection, install fire hydrants, and keep their streets in repair. See Pence v. City of Frankfort, 101 Ky. 534, 19 Ky.Law Rep. 721, 41 S.W. 1011, on presumption that usual municipal services will be extended into annexed area.

The material injury which protestants must show to avoid a proposed annexation to a fourth-class city has been defined as the "clear and obvious imposition of manifest and substantial burdens." City of Prestonsburg v. Conn, Ky., 317 S.W.2d 484. See also Masonic Widows and Orphans Home and Infirmary v. City of Louisville, 309 Ky. 532, 217 S.W.2d 815. The burdens are considered as relative to the benefits, and there must be a substantial excess of burdens over benefits in order to defeat annexation. City of Ludlow v. Ludlow, 186 Ky. 246, 216 S.W. 596.

Municipal taxation and regulation, to sum up the principal objections, do not constitute material injury within the meaning of KRS 81.220, but are burdens to be considered in relation to benefits. Some of the benefits of municipal incorporation or annexation which have been held to compensate for the burdens of taxation and regulation are streets and sidewalks, street lights, a better water supply, police and fire protection, reduced fire insurance rates and city rates on electricity, telephone service, and street cars. Yancy v. Town of Fairview, 23 Ky.Law Rep. 2087, 66 S.W. 636; City of Ludlow v. Ludlow, 186 Ky. 246, 216 S.W. 596; City of Georgetown v. Pullen, 187 Ky. 697, 220 S.W. 733; Adkins v. City of Pineville, Ky., 271 S.W.2d 625; City of Prestonsburg v. Conn, Ky., 317 S.W.2d 484.

Where the proposed annex would not receive the standard benefits of municipal incorporation, the imposition of municipal taxation has been held to amount to material injury. Town of Latonia v. Hopkins, 104 Ky. 419, 20 Ky.Law Rep. 620, 47 S.W. 248; Gilley v. City of Russell, 212 Ky.

798, 280 S.W. 101; City of Russell v. Ironton-Russell Bridge Company, 249 Ky. 307, 60 S.W.2d 628; City of Cold Spring v. Laycock, Ky., 312 S.W.2d 882. In the Bridge Company case, where the City of Russell attempted to annex part of the Ohio River, it was held that the imposition of municipal taxes materially injured the company because the bridge could not be benefited by municipal services. In the Cold Spring, Gilley, and Latonia cases, annexation of an area four times, eight times, and forty times the size of the city respectively, was denied because of the inability of the city to provide normal municipal facilities to so large an area. See also Hannah v. City of South Shore, Ky., 332 S.W.2d 247.

 In the review by the courts of a city's legislative action of proposed annexation, the courts are confined in their fact-finding function to "the realm of clear and obvious." City of Louisville v. Kraft, Ky., 297 S.W.2d 39; approved in City of Eddyville v. City of Kuttawa, Ky., 343 S.W.2d 404. Considering the benefits as opposed to any burdens, there must be a "clear and obvious" showing that the burdens substantially exceed the benefits to establish "material injury." There was no such showing here, and the judgment was erroneous in so holding.

It is argued that the territory proposed to be annexed is at least in part not urban in nature and thus not suitable for annexation. A similar argument was advanced, unsuccessfully, in Mitchell v. City of Central City, Ky., 354 S.W.2d 281 to which reference is made for a discussion of the principles governing. A comparison of the records in the two cases indicates that the territory in this case has been more fully developed and is more urban in character than in the Central City case. The finding of fact made by the trial judge here as to the roughness of terrain of a small part of the territory has no merit in view of the Court's conclusion in the Central City case. See also City of Ludlow v. Ludlow, 186 Ky. 246, 216 S.W. 596, wherein the territory annexed had no buildings on it and some of it was variously described as hilly, steep, precipitous, and rough.

Judgment reversed.