A. E. BUCHANAN et al., Appellants,

v.

CITY OF DAYTON, Appellee.

Court of Appeals of Kentucky.

Dec. 14, 1962.

Malcolm R. Rhoads, Benton, Benton, Lue-- deke & Rhoads, Newport, for appellants.

Davies & Hirschfeld, Newport, Charles. E. Graham, Dayton, for appellee.

PALMORE, Judge.

In 1954, Dayton, a 4th class city located' on the Ohio River in Campbell County, filed' a suit under KRS 84.210 to annex a 57-acre- territory contiguous to its southeast corner. Affected parties remonstrated in the manner- authorized by KRS 84.220. On February 2, 1957, while that proceeding in the circuit court lay dormant and untried, the city en- acted a new ordinance proposing to annex the same area plus an adjacent 270 acres contiguous to the east city limits. The pres- ent annexation suit covering the entire area was filed on April 4, 1957. Thereafter, on, May 27, 1957, by leave of court but over ob- jection of the remonstrants therein, the- original annexation suit was dismissed with- out prejudice.

A very substantial majority of the resident voters in the area proposed to be annexed remonstrated, and among their defenses pleaded the pendency of the 1954 proceeding at the time the 1957 ordinance was enacted and this suit was commenced. Later, in 1958, the city discovered that the area described included some territory already a part of the City of Ft. Thomas, whereupon it enacted a corrective ordinance and was permitted to amend its complaint accordingly. The two boundaries as finally described contain 52 acres and 250 acres, which we shall call the Dayton Pike and Mary Inglis Highway areas, respectively.

After hearing a welter of testimony the trial court found that there was no evidence of manifest or material injury to the owners of real estate within the proposed extension and sustained the annexation. The remonstrants appeal.

■ The arguments fall in two categories, one relating principally to the technical questions posed by the institution of new annexation proceedings while the 1954 suit was still in court, and by the amendment of boundary descriptions during the course of the litigation, and the other relating to the sufficiency of the evidence to sustain the judgment. We shall take them in that order.

Since the dismissal of the 1954 suit without prejudice was not in any sense "a judgment of the circuit court * * * adverse to annexation," KRS 81.270, forbidding any further annexation attempt within two years, is not applicable.

In Garner v. City of Lexington, Ky. 1957, 306 S.W.2d 305, the city, while a remonstrance suit was pending, enacted an ordinance proposing to annex a one-owner portion of the property involved in the existing litigation. As the single owner consented, there was no prospect of a remonstrance in this independent proceeding, and had it been permitted to take its normal course the practical result would have been a withdrawal of the tract from the pending suit, ex parte and without leave. This court held that the new proceeding could not take place independently of the court which had jurisdiction of the existing action.

The Garner case involved a 2d class city and different statutes (KRS 81.140 and 81.-110) under which, unless a suit is filed by remonstrants, the annexation may be completed without court action. In this case, however, KRS 81.210 compels the filing of suit by the city, and it is not possible in any way to complete an annexation independently of the circuit court. We do not have here, as in the Garner case, any attempt to circumvent or thwart the dominion of the circuit court; on the contrary, the procedure taken by the city was subjected to and received the approval of the court. If Dayton's ordinance of February 2, 1957, or its complaint filed on April 4, 1957, had been appropriately attacked before the city moved to dismiss the old suit, or if the city had not then so moved, we think that probably an abatement would have been mandatory. But the dismissal wiped the slate clean of the original proceeding, and when the defense was first raised (some 5 months later) there was no longer any basis for it. We find no error in this respect.

■ The boundary corrections had been duly enacted and advertised and were not substantial in comparison with the whole area to be annexed; in the absence of a showing of any particular prejudice it was properly within the discretion of the court to permit the necessary amendment.

Coming now to the facts, it is recognized by both sides that the only issue to be determined by the court was whether the annexation would "cause material injury to the owners of real estate in the limits of the proposed extension." KRS 81.220. There is disagreement as to who had the burden of proof, and the remonstrants contend the circuit court considered it to be theirs. The record does not make this clear, but for the purposes at hand we shall assume it to be so.

■ Under what is now KRS 81.110, setting forth the procedure applicable to

all but 4th class cities, it has been held that if 75% or more of the freeholders remonstrate the burden is on the city to show that a failure to annex will materially retard its prosperity and that of the owners and inhabitants of the territory sought to be annexed. Town of Bloomfield v. Muir, 1927, 221 Ky. 815, 299 S.W. 976; Adams v. City of Jeffersontown, 1931, 240 Ky. 482, 42 S.W. 2d 704; Likins v. City of Clarkson, Ky. 1955, 280 S.W.2d 491. Under KRS 81.220 the cleavage is set at 50% rather than 75%, and the phraseology is different. Which side has the burden of proof on the question of material injury to the landowners· is not indicated by the statute itself and evidently has not been directly decided by this court. However, in the recent case of City of Greenville v. Gossett, Ky. 1962, 355 S.W.2d 311, the language of the opinion strongly suggests that the burden is on the remonstrants, and when it is considered in relation to the principle that "there must be a 'clear and obvious' showing that the burdens substantially exceed the benefits," this policy is sound and sensible. We hold that in a proceeding governed by KRS 81.220, when the city has proved a prima facie case of substantial benefit (e. g., police and fire protection) to the property in the proposed addition it is sufficient to sustain a judgment of annexation. A showing of substantial benefits is tantamount to a negation of material injury, and the effect is to shift to the remonstrants the burden of proving a "clear and obvious imposition of manifest and substantial burdens." Cf. City of Greenville v. Gossett, Ky. 1962, 355 S.W.2d 311, and cases therein cited.

Dayton is an old city, embracing about 300 acres and a population of some 9,000. Figuratively speaking, the unincorporated area sought to be annexed is an island in that it is surrounded by Dayton on the west and south, Ft. Thomas on the south and east, and the Ohio River on the north. Thus it is completely isolated from other unincorporated areas of the county. The 52-acre Dayton Pike area is mostly on the slope and high ridge overlooking the town and river from the south, and the 250-acre Mary Inglis Highway area lies in the long lowland strip between the ridge (most of which is in Ft. Thomas) and the river. Running through the middle of this strip in an east-west direction parallel with the river are the Mary Inglis Highway and a main right-of-way of the C. & O. Railroad. Most of the land between the highway and the river is subject to flooding, and the terrain southward from the highway and railroad rises sharply toward Ft. Thomas and the crest of the ridge. Both the Dayton Pike and Mary Inglis areas are sparsely settled, for the simple reason that most of the land has not been very suitable for development. However, there are spots and fringes of both that are residentially occupied, and there is a variety of both residential and business improvements along the Mary Inglis Highway, including taverns, trailer parks, summer camps, and places of public entertainment visited at times by large numbers of people. One of these, called Tacoma Park, immediately adjoins the city limit.

Dayton has regular police and fire departments with modern equipment. The availability of fire protection definitely will result in lower insurance rates. It has a garbage collection service which, though financed through assessment of the individual users, apparently exists by arrangement with the city. It has sewage disposal facilities capable of extension to some, at least, of the proposed addition. In the main, these are the benefits offered by annexation.

The principal disadvantage is the imposition of city taxes, including an occupational license tax. The city has a monthly tax on trailers, and this prospect brought owners and occupants of the trailer camps along Mary Inglis Highway to court in a swarm. The inhabitants of the Dayton Pike area fear that the city will not maintain the pike as well as the county has done, but their real objection (if not the tax angle) seemed to be that they regard Dayton as a deteriorating, poorly-run city, outshone and shoddy as compared with Ft. Thomas and

other attractive communities in the vicinity. They just do not like Dayton and do not want to be a part of it. They prefer things the way they are.

 As we see it, there is no question but that the inhabited parts of the proposed area should have and will be substantially benefited by the police and fire protection the city is able to offer. This in itself distinguishes such cases as City of Cold Springs v. Laycock, Ky. 1958, 312 S.W.2d 882, and Town of Latonia v. Hopkins, 1898, 104 Ky. 419, 47 S.W. 248, 20 KLR 620, in each of which the city had nothing to offer (and in each of which the judgment under review by this court was one in which the chancellor *denied* rather than granted the annexation). When the property is mixed, some suitable and some unsuitable for urban development, it must be considered as a whole, and we cannot draw a fine line on its annexability. Cf. Mitchell v. City of Central City, Ky. 1962, 354 S.W.2d 281. Unless we deem it to be "clearly erroneous," the finding of the circuit court must be accepted as conclusive. CR 52.01. Likins v. City of Clarkson, Ky. 1955, 280 S.W.2d 491.

The taxable property in Dayton has an assessed value of about $6,000,000. The city tax rate is 85¢, inclusive of 10¢ for servicing a voted indebtedness, the unpaid balance of which at the end of 1958 was $32,500. Evidently the city has not handled its sinking fund account in an orderly manner, and thus "owes" the sinking fund out of its general funds; nevertheless, the installments on the bonded debt have been paid as they matured and are not in default. School taxes, of course, are not involved, since annexation will not of itself alter the school district. The most serious financial problem manifested in the accountants' report of the city's condition appears to be a year-to-year floating debt (probably an accumulation of annual deficits) evidenced in the form of a $45,000 short-term bank note as of the end of 1958. One year earlier this current liability amounted to $35,000.

Remonstrants did not pursue this problem to the point that we can say, from the record, whether the city's financial condition represents any substantial threat to the property of prospective taxpayers. That the territory annexed will be subject to taxation to pay a pre-existing debt of the municipality is not, as such, a dispositive objection to annexation. McQuillin, Municipal Corporations (3d ed.), § 7.23, pp. 325–326. Hence we are not in a position to hold, on this basis, that the chancellor's finding of no material injury was clearly erroneous.

On the whole case, we are unable to say that the remonstrants made such a clear and obvious showing of a substantial excess of the burdens over the benefits to the landowners that the chancellor was bound to deny the annexation. See City of Greenville v. Gossett, Ky. 1962, 355 S.W.2d 311, and Mitchell v. City of Central City, Ky. 1962, 354 S.W.2d 281.

Judgment affirmed.