## Masonic Widows and Orphans Home and Infirmary, v. City of Louisville.

## Fenley et al. v. City of Louisville.

## Green Tree Manor, Inc., et al. v. City of Louisville.

December 17, 1948.

As Extended on Denial of Rehearing.

February 25, 1949.

534

Ropke, Goldstein, Lampe & Poynter and Wilbur Fields for appellants.

Gilbert Burnett, Lawrence G. Duncan, and S. Merrill Russell for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER —Affirming.

A Louisville ordinance of April 24, 1946, No. 50, proposed the annexation of certain territory adjoining the eastern boundary of the city extending between the Brownsboro Road and the Lexington Road. With a slight irregularity the extended boundary line runs parallel with the old line from the Brownsboro Road to the center of Frankfort Avenue extended (called the Shelbyville Road beyond the city limits), thence north westwardly with the Avenue to within a few feet of the old line, thence southwardly to the Lexington Road. Only a small part of the annexed area is south of Frankfort Avenue. It is very narrow. It takes in all of eighteen lots on which there are residences and only the front yards of eighteen other houses. The rest of these lots was annexed in 1927, the line at that time being run within forty feet, or so, of Eline Avenue on which they are located. All of the larger area north of Frankfort Avenue is owned by the Masonic Widows and Orphans Home, a charitable corporation, Green Tree Manor, a

private corporation, Misses Frances and Annette Fenley, and A. W. Bauer. It also takes in the right-of-way of the Louisville and Nashville Railroad Company. Separate suits were filed by the Masonic Home and the Misses Fenley, and another by Bauer, Green Tree Manor, Inc., and a number of lessees of its apartments, protesting the annexation. The three cases were tried together. At the close of all of the evidence the court peremptorily instructed the jury to find a verdict that the area should be annexed. The protestants appeal.

An amended petition was filed in the Green Tree Manor case pleading that the area north of Frankfort Avenue and the railroad tracks is reasonably separable from the narrow strip of residential property south of that main thoroughfare and that the protestants represent 100 per cent of the property owners in the larger and severable area. None of the 65 property owners on the south side protested or appear in the litigation, nor does the railroad company. The apparent advantage of this separation is that it places the burden of proof upon the city to maintain its right to annex the property. If the property on the other side of Frankfort Avenue is regarded, then less than 75 per cent have remonstrated. The plaintiffs in that suit also allege in their amendment that the ordinance is a part of a series or a general proposal of the city to annex 24 square miles of territory adjacent to the present boundary, said to be the equivalent of 60 per cent of the present area of the city. They charge that the city is unprepared to extend municipal services and has made no plans for the extension of governmental functions to it, including this particular area; that its annexation would not be for the benefit of the city or the territory described in their case; that failure to annex this territory would not materially retard the prosperity of the city and of the owners or inhabitants of the property. A demurrer to the amended petition was sustained.

On this point the appellants rely upon Sullivan v. City of Louisville, 295 Ky. 68, 173 S.W.2d 981. In that case there were three separate and distinct builtup subdivisions embraced in the ordinance. We held that one might be considered separately from the others under the terms of KRS 81.110, authorizing "one or more residents or freeholders" to protest in court to the an-

nexation of any part "of the territory proposed to be annexed." The decision was not based upon the mere fact that the subdivision of the protesting property owners was divided from the others by a street. It was upon the practical fact that it was a separate and distinct unit. In Lewis v. Town of Brandenburg, 105 Ky. 14, 47 S.W. 862, 48 S.W. 978, 979, the ordinance enacted under a statute the same as this one in the particular with which we are concerned proposed the annexation of territory lying on different sides of the town. Since it did not appear that they were separate, disconnected parcels, it was held that they should be regarded together. The court thought it was "sufficient to say that the statute providing for the annexation does not permit the residents of the territory sought to be annexed to split it up into parcels for the purpose of resisting annexation of one or more of such parcels."

The appellants say that this small neck of territory consisting of lots fully built up was tied to the larger acreage area in order to obtain the benefit of the burden of proof. However, there seems to have been a real reason for doing so. It is explained that the combined, irregularly-shaped area was all the territory lying between the then limits of Louisville and the limits of St. Matthews, the creation of which as a separate city had been inaugurated. It could not have been conclusively presumed that the pending litigation concerning the organization of the city of St. Matthews would result in the later invalidation of the statute upon which the proceeding was based. See Engle v. Bonnie, 305 Ky. 850, 204 S.W.2d 963.

It may be observed that the present statute, KRS 81.110, is confusing in several respects, e.g., it provides that there may be a protest of the annexation of a part of the territory covered by the proposal, but when it comes to the trial of the issue, it seems that the "territory to be annexed" is to be regarded as a unit. We are of opinion that the court properly sustained demurrer to this pleading.

We think the same ruling was proper as to the paragraph of the amended petition which undertook to bring into the case the general inability of the city to take care of the entire program of annexation and

its alleged detriment as a whole. Only the territory covered by the particular ordinance could be brought in issue.

And here it may be said that we concur in the exclusion of the proffered technical books of statistics, including the United States Census Report of 1940, in order to show that the per capita cost of government of cities over 250,000 population increases as the population increases until it reaches 1,000,000; that the prosperity of an area largely depends upon the population of a metropolitan district, not of a city within a district; that the profitable source of revenue of a city comes from the manufacturing and business districts and is expended in the residential sections; that the annexation of residential areas increases the per capita cost of government; and that tax rates of cities over 250,000 are lower where the city is surrounded by densely populated areas or incorporated towns than in the instances where the cities are not encompassed. We are of like opinion as to the offered testimony of experts in city management that the growth or prosperity of a city will not be stopped by a failure to extend its boundary since a city's function is merely to collect taxes and spend the revenue in services to its citizens; therefore, in the present case that it would be ''poor business'' for the city to take in this territory, a large part of which is a nontaxable charitable institution, with many children to be educated in the city schools, and certain other factors. It seems to us that the statistical testimony and the deductions which it may afford are too speculative and indeterminate. Moreover, publications of the character of the ''Municipal Year Book'' are generally unacceptable as competent evidence as to the information they contain. Kentucky Public Service Company v. Topmiller, 204 Ky. 196, 263 S.W. 706. As to the expert evidence, it may be said that it has been consistently held that, considering the benefits, the payment of city taxes by the owners of annexed territory is not the character of injury or detriment contemplated by annexation statutes. City of Louisville v. Sullivan, 302 Ky. 86, 193 S.W.2d 1017. This is the great weight of authority. 37 Am.Jur., Municipal Corporations, sec. 29. The rule works both ways as where the property owner claims the city would get the worst of the bargain.

After the jury had been sworn for the trial of these cases, the several plaintiffs tendered supplemental petitions pleading that the ordinance does not accurately define any territory to be annexed, as is required by KRS 81.100. This brought in a new issue one year after the original petitions had been filed. Waiving consideration of the description in the ordinance as being sufficient to identify readily the lines of the territory, we think the ruling of the court refusing to file the supplemental petitions was within its discretion.

It is a closer question whether the court was justified in taking the case from the jury and deciding as a matter of law that the territory should be annexed. It is said in briefs that the ruling was primarily based upon City of Louisville v. Sullivan, 302 Ky. 86, 193 S.W.2d 1017. A judgment founded upon a verdict was reversed because we regarded the factual evidence not sufficient as a matter of law to sustain the objections of the protestants. That case on the appeal practically went by default since the protestants filed no brief and we accepted the statements of fact contained in the appellant's brief. They disclosed conditions very different from those presented in this case.

The annexation of contiguous territory to a city is a legislative function. Lenox Land Co. v. City of Oakdale, 137 Ky. 484, 125 S.W. 1089. It has been delegated by the General Assembly of the state through different enactments to the legislative bodies of the several classes of municipalities but with the provision that property owners affected may obtain a review by the courts. Where the city is of the first class, it is provided that the trial procedure shall be that prescribed for jury cases. KRS 81.110. Where it is of any other class, the case is tried in equity without the intervention of a jury. KRS 81.140, 81.190, 81.220, 81.230, 81.240. In a Louisville case where less than 75 percent of the owners of real property proposed to be annexed have remonstrated, the jury is instructed to find for the annexation if they shall believe from the evidence that it will be for the interest of the city or will cause no manifest injury to the owners of the real estate in the territory. Not one or the other but both states of fact must be found. If annexation would be to the interest of the city, the ordinance of annexation is to be declared ef-

fectual unless the protestants have shown it would cause them manifest injury. Langhan v. City of Louisville, 186 Ky. 438, 216 S.W. 1082; City of Louisville v. Sullivan, supra. The protestants carry the burden of proving it would not be to the interest of the city and would cause manifest injury to the property holders.

These are the questions ordinarily submitted to the jury. This appeal calls for the judicial consideration of the ultimate factors that enter into the issues and how they are to be viewed as a matter of law. The question we now have is the sufficiency of the evidence to prove the grounds of the protest as so measured. The term "to the interest of the city" is but to say that annexation would contribute to its prosperity and be generally advantageous to the municipality. See Collins v. Crittenden, 70 S.W. 183, 24 Ky.Law Rep. 899; Park v. Covington, 187 Ky. 311, 218 S.W. 986. That involves intangible as well as tangible factors. The term "manifest injury" means the clear and obvious imposition of material or substantial burdens upon the owners of the property as a class or the majority of them. City of Louisville v. Sullivan, supra. The situation and conditions are to be considered from the standpoint of the whole—the city as an organized community and the suburban property as an unorganized community. It is to the interest of the city showing growth and expansion, particularly of a movement or trend of development, not to be placed in a straitjacket. Nor is it reasonable or fair that property enjoying substantial city convenviences, facilities and advantages should remain without and not be made a part of the municipality and subject to the power of the government in sustaining peace and order and fire protection. The over-all character of the property, its use and adaptability or capacity of being absorbed into the city are to be regarded. City of Russell v. Ironton-Russell Bridge Co., 249 Ky. 307, 60 S.W.2d 628. This embraces the consideration of density of population and the extent of urban development. The view to be taken is of the entire area and not the separate parcels of real estate in isolation. It is not the individual burdens or the wishes of the individual owners, although, of course, what affects the individual affects the whole. There is no more material factor—whether present or absent—than that the area and its inhabitants have in fact the use and

benefit of city conveniences and facilities without contribution to the expense (City of Georgetown v. Pullen, 187 Ky. 697, 220 S.W. 733) though this of itself is not sufficient to warrant annexation. City of Lexington v. Rankin, 278 Ky. 388, 128 S.W.2d 710.

That part of the area south of Frankfort Avenue not already within the city limits is fully built up with residences which are served by streets and enjoy all of the city advantages. The owners wish to be brought into the city.

Green Tree Manor is a modern development of 25 large apartment houses having 265 units or apartments. It is owned by a private corporation. Its area is 22 acres and is laid out with walks and driveways. Its entrance and three or four acres, containing a small commercial building and an administrative office, are already within the corporate limits of Louisville. The property has an assessed value for taxation of $816,000. These apartments have city lights and gas and water. By reason of the fact that the water supply line enters the property within the city the inhabitants pay the city rates. It is connected with the city sewer system. The county police force exercises jurisdiction over this property, and though it does not have city police and fire protection technically, it has such in fact, as past experiences have shown. Except that it is not served by the city garbage collector and does not have city street lights, there is not a single municipal advantage which the property does not have. There would certainly be "no manifest injury" to this property to have the city furnish street lights and garbage collection services. Of the 60 children residing in these apartments, 18 attend a county school, which is closer, and there is some evidence that the parents object to coming into the city because their children would have to travel a greater distance to the city schools, as do the other 42 children for whom city tuition is being paid. These tenants have no independent privilege or right to oppose annexation. They are not freeholders.

Counsel for this protestant says, "Annexation would not give the suburbs any benefits they do not have or cannot get, including streets, sewers, police, fire, garbage, lights, hospital, and zoning." This is predicated

on the theory of separability of the area by Frankfort Avenue so that more than 75 per cent of the freeholders are remonstrating. As we have pointed out, since less than 75 per cent of the freeholders of the entire territory filed the protest in court, on this aspect the condition is, ironically, the converse, namely, that annexation must be adjudged if it would cause no substantial or material injury to the property owners.

Bauer owns 3.66 acres on the Brownsboro Road just outside the city limits. He and his family have conducted a liquor dispensary, or tavern, on the property for the past 76 years. He also has a garage which he rents for a substantial sum. This property also has every city convenience and facility except sewer service. His only objection to being brought within the city limits is that he would have to pay more taxes. He testified that he would derive no benefit through annexation of the property, but he does not undertake to show any injury.

The Misses Fenley are elderly ladies living in a home erected by their grandfather one hundred years ago. One owns about 28 acres fronting on Frankfort Avenue and around Green Tree Manor property also on Fenley Avenue. The other owns about 22 acres adjoining on which the residence is located, It fronts on Fenley Avenue. This property lies between that street (which has not been wholly improved) and the property of the Masonic Home. A strip of about two hundred feet of it on Fenley Avenue was taken into the city a number of years ago. Part of the land has been used from time to time for agriculture and part is hilly and has been left "wild." But all of it is suitable and very desirable for city development. The residence is not being served by electricity, city water or sewers, or any other modern convenience. These ladies are happy in their present situation and deplore the idea of becoming city dwellers. They are so devoted to their home that they have refused as much as $100,000 for their property. Other than the unusual personal reasons, this property is of the character and situation as that involved in City of Ludlow v. Ludlow, 186 Ky. 246, 216 S.W. 596, in which we expressed the view that it was inconceivable that the owners would suffer material, or any, injury from the annexation in view of the beneficial results incident to

incorporation in the city, and that, as a large portion of the land was suitable for city purposes, it should be annexed. The only adverse effect from annexation is that of payment of city taxes which, as we have stated, is not alone sufficient to defeat annexation although it is an element to be considered in connection with the benefits and the enhancement of valuation. City of Ludlow v. Ludlow, supra; City of Louisville v. Sullivan, 302 Ky. 86, 193 S.W.2d 1017.

The Masonic Home property consists of 127 acres and extends all the way through from the Brownsboro Road to Frankfort Avenue. The institution cares for 121 children and 130 widows. It is truly a self-contained community. It has a number of new and commodious buildings, with its own sewer system and contracts for garbage disposal. It conducts its own private school. It operates a printing plant publishing the Masonic Journal for Kentucky Masons and, by contract, several other publications. More than one-half the acreage is in cultivation, and hogs and cattle are raised not only for the products but for the training of the children, most of whom come from rural Kentucky. It has an independent post office, known as Masonic Home, Kentucky. The government pays the superintendent as postmaster $3,400 a year. The institution adds only $1,000 as his full compensation. By reason of mailing the publications in its own post office, the institution has the benefit of very favorable postal rates for the several periodicals it prints. The Home undertook to prove that if its property should become a part of the city of Louisville, it would lose its post office and thereby suffer not only the loss of the government contribution to the salary of its superintendent but perhaps $20,000 a year because of the diffierential in the postal rates. But the evidence as to the loss of the post office is not very certain and rests upon general information of the superintendent. A Louisville ordinance makes it unlawful for "hotels, hospitals and similar establishments to sell or serve any milk or milk products except in the original container in which it was received from the producer or distributor." The Home purchases milk in five-gallon cans. It contends that the application of this ordinance would require that it purchase and serve milk to its wards in half-pint bottles and the increase in the cost would be $2,900 a year.

The city authorities, however, testified that it has not been the interpretation of this ordinance that it applies to institutions like the Masonic Home and that it would not be so enforced. Another ordinance contains restrictions upon the manner of raising hogs within the city limits. It does not appear that there would be any great detriment to the Home to comply with its terms. On the whole this property owner does establish that annexation would increase its costs of operation, but, as we have said, an over-all view must be taken of the entire area and financial losses to one property holder alone cannot be deemed sufficient to prevent the annexation of the whole area.

A number of witnesses testified that annexation of all this property would be to the interest of the city. They gave in detail the facts upon which their opinions rest, including some of the considerations to which we have alluded. About the only real or substantial detriment is the cost of municipal activities such as maintaining streets, street lighting, fire and police protection and educational facilities. No taxes would be received from the Masonic Home, a charitable institution. But the character of the property will demand less expenditure for these things than is ordinarily the case, except the education of the children of the Home should the management change its policy and send them to the public schools. It is also shown that the municipal water company would lose a differential of 50 per cent paid by outsiders. When the other factors mentioned are regarded and this entire territory considered as a whole, it is clear all the property shares in the advantages and benefits incident to the municipal government. Whether the owners avail themselves of the full measure of such privilege is not pertinent to the inquiry as to a "manifest injury."

We conclude that the petitioners did not produce more than a scintilla of evidence of injury to the property or even of unjust or unequal consequences. We do not think the evidence was sufficient for the jury to have found or the court to have adjudged a nullification of the legislative action of the Board of Aldermen annexing the territory.

On a petition for rehearing Green Tree Manor

insists that the construction of the annexation statute by the trial court and this court and the ruling that the evidence was not sufficient to take the case to the jury violate the federal and state constitutions. Its counsel argue that it is being deprived of its property without due process and without the equal protection of the law, contrary to the Fourteenth Amendment of the Federal Constitution and Section 3 of the Kentucky Constitution; that it has been denied the right of trial by jury, contrary to the Seventh Amendment of the Federal Constitution and Section 7 of the Kentucky Constitution; and that it is the victim of ''absolute and arbitrary power,'' contrary to Section 2 of the Kentucky Constitution. For good measure Sections 26 and 27 of the Kentucky Constitution are cited. The former declares the supremacy of the Bill of Rights, and the latter establishes the independence of the three departments of government.

The matter of creation of cities and extensions of their boundaries has always been recognized as a proper function of the state legislature. It exercised that function in laying down the rules to be followed, among which is the provision that where a review is sought in the courts, as we have pointed out above, the procedure in the case of a city of the first class—and in that class only—is that prescribed for a jury trial. KRS 81.110. It was long ago settled that the interpretation of statutes is a proper judicial function, and, more anciently, that it is the essence of judicial power to determine whether or not a party has produced evidence which is sufficient in law to sustain judgment in his favor and to exercise that inherent power by directing a verdict where there is lack of proof supporting the material elements of the cause of action asserted. The proper exercise of that power does not impair or defeat the constitutional right to trial by jury. Slocum v. New York Life Ins. Co., 228 U.S. 364, 33 S.Ct. 523, 57 L.Ed. 879, Ann. Cas.1914D, 1029; Lyon v. Mutual Ben. Health & Accident Ass'n, 305 U.S. 484, 59 S.Ct. 297, 83 L.Ed. 303, rehearing denied in 306 U.S. 667, 59 S.Ct. 459, 83 L.Ed. 1062. We think the constitutional processes have been observed and the appellant's constitutional rights preserved in this case.

Wherefore, the judgment is affirmed.