**CITY OF LOUISVILLE, Appellant,**

**v.**

**Edward A. KRAFT et al., Appellees.**

Court of Appeals of Kentucky.

Oct. 19, 1956.

Rehearing Denied Jan. 25, 1957.

S. M. Russell, Herman E. Frick, Henri L. Mangeot, Louisville, for appellant.

Wilbur Fields, C. Maxwell Brown, Louisville, for appellees.

CULLEN, Commissioner.

This appeal represents another chapter in the long history of litigation involving efforts to establish municipal jurisdiction over the large, heavily populated community known as St. Matthews, lying immediately east of the City of Louisville. The main issue in the legal war has been whether the community shall be annexed to Louisville, or shall become a separate municipality. Over the past ten years a great many battles in that war have reached this Court.

The present controversy concerns the effort of the City of Louisville to annex that part of the St. Matthews community known as the "business district." The ordinance proposing annexation was adopted in 1946. A petition of remonstrance was filed in the circuit court by a number of freeholders in the territory, thus requiring a trial of the question of annexation. KRS 81.110. For reasons which are explained in some of our previous opinions in the St. Matthews' cases, the remonstrance suit was not tried until

1955. The jury returned a verdict against annexation, and judgment was entered upon the verdict. The City of Louisville has appealed, contending that the court erred in not sustaining its motion for a directed verdict, and its subsequent motion for judgment notwithstanding the verdict.

The territory proposed to be annexed consists of the lots abutting both sides of a street known as the Lexington Road, from the point where this street, running in a northeast direction, leaves the city limits of Louisville to the point where it converges with Frankfort Avenue, running east; also included are the lots abutting on the south side of the Shelbyville Road (Frankfort Avenue extended) for a short distance east of the point of convergence with the Lexington Road, and an area of several small blocks to the south of those abutting lots. A majority of the lots abutting on the Lexington Road and the Shelbyville Road are devoted to commercial uses, and they constitute the heart of the business district of the St. Matthews community.

A few years before 1946, all of the St. Matthews area except the territory involved in the present annexation proceeding was incorporated as a sanitation district, to provide sewer facilities. The territory here involved was not included because the property owners in the territory previously had made their own sewer arrangements with the City of Louisville. In 1946, the sanitation district was attempted to be incorporated as a fourth-class city, under an Act of the 1946 General Assembly, but the Act later was held unconstitutional and the attempted incorporation therefore failed.

Thereafter the City of Louisville attempted in a number of proceedings to annex the areas embraced in the sanitation district, but for one reason or another these attempts failed. The final effort resulted in a jury verdict and judgment against annexation, which was not appealed.

■ While the attempts of Louisville to annex the remainder of the St. Matthews area were being made, the instant remonstrance suit, concerning the business district, lay dormant. In the meantime, an area of a few residential blocks, north of the Shelbyville Road, was incorporated as the sixth-class City of St. Matthews. After one abortive effort at annexation had failed, this little city succeeded in annexing substantially all of the original sanitation district, which surrounds on three sides the territory involved in the instant action. Later the City of St. Matthews annexed the central part of the territory involved in the action. However, if the right of Louisville to annex this territory is upheld, the Louisville annexation, having first been initiated, will prevail over the St. Matthews annexation. Pfieffer v. City of Louisville, Ky., 240 S.W.2d 560; City of Lincolnshire v. Highbaugh Realty Co., Ky., 278 S.W.2d 636.

There is no suggestion in this case that the territory is not urban in nature, or is not adaptable to municipal use. The controversy revolves around the question of whether the municipal services and regulations which the territory clearly needs shall be supplied by the City of Louisville or by a separate St. Matthews municipality.

The governing statute is KRS 81.110, which provides that if less than 75 percent of the freeholders in the territory proposed to be annexed have remonstrated, the issues to be tried in court are whether the adding of the territory will be "for the interest of the city," and will "cause no manifest injury to the persons owning real estate in the territory sought to be annexed". (The number of remonstrating freeholders here is less than 75 percent.)

■ In approaching our discussion of the issues in this case, we think it is essential that careful consideration be given to the limitations that exist upon the functions of the court and jury in annexation cases. Of first consideration is the fact that the creation of municipalities, and the increase or reduction of their boundaries, are matters of legislative function. The political and economic advisability of annexation, and the *policy* questions involved in the problem of municipal expansion, are to be determined solely by the legislative branch of government. It it encumbent upon the legislature to prescribe the facts and conditions under which annexation may take place. The only function of the courts is to find whether the prescribed facts and conditions exist. Constitutionally, the legislature cannot delegate to the courts its policy functions in this field, or leave to the courts to determine, as a matter of discretion or judgment, whether annexation should take place. 37 Am.Jur., Municipal Corporations, sec. 25, pp. 641, 642; Masonic Widows' & Orphans' Home v. City of Louisville, 309 Ky. 532, 217 S.W.2d 815; Chesapeake & O. Ry. Co. v. City of Silver Grove, Ky., 249 S.W.2d 520; Engle v. Miller, 303 Ky. 731, 199 S.W.2d 123; Lewis v. Town of Brandenburg, 105 Ky. 14, 47 S.W. 862, 48 S.W. 978; White v. City of Glasgow, 148 Ky. 13, 146 S.W. 19; Board of Trustees of Elkton v. Gill, 94 Ky. 138, 21 S.W. 579; Lenox Land Co. v. City of Oakdale, 137 Ky. 484, 125 S.W. 1089; Carrithers v. City of Shelbyville, 126 Ky. 769, 104 S.W. 744, 17 L.R.A.,N.S., 421; Cheaney v. Hooser, 9 B.Mon. 330; Jernigan v. City of Madisonville, 102 Ky. 313, 43 S.W. 448.

We find ourselves confronted with a statute in which the legislature has employed extremely broad language in attempting to prescribe the facts to be determined by the court and jury. The provision that the court and jury shall determine what is "for the interest of the city" appears on its face to be a blanket invitation for the judicial branch of government to consider all the economic, political and social aspects of municipal expansion. Although somewhat more narrow, the issue of "manifest injury" to the property owners likewise seems to offer a broad scope of policy determination.

■ The fact that the legislature seemingly has delegated a broad range of discretion to the courts in determining annexation questions cannot be used by the courts as a justification for exercising such a discretion, because as hereinbefore pointed out, the legislature has no power to make such a delegation. The courts must limit themselves to the fact-finding function, doing the best they can to draw some line between fact and policy.

■■ In Masonic Widows' & Orphans' Home v. City of Louisville, 309 Ky. 532, 217 S.W.2d 815, 819, we endeavored to place a construction upon the statutory terms that would render some assistance in defining the scope of the fact determination to be made in annexation cases. We defined " 'to the interest of the city' " as meaning that the annexation should contribute to the prosperity of and be generally advantageous to the city. We construed "manifest injury" to mean the clear and obvious imposition of material or substantial burdens upon the property owners.

The definitions employed in the Masonic Home case still leave the scope of the court functions pretty loosely defined. Perhaps the key can be found to lie in the words "clear and obvious". If the courts confine the fact-finding function to such things as are clear and obvious, some hope may exist of steering clear of the policy field.

As hereinbefore stated, we are faced with a question of annexation of territory that is urban in nature, and adaptable for municipal uses. We must consider what circumstances might cause the annexation of such a territory to be contrary to the interests of the city, or to manifestly injure the property owners in the territory.

■ Within the realm of clear and obvious facts, it is difficult to conceive of any situation in which the annexation of urban territory to a city could be contrary to the interests of the city, except where the annexation would constitute an overextension of the *capacities* of the city to

function as a sound going concern. One illustration of this may be found in Hardin v. City of St. Matthews, Ky., 240 S.W.2d 554, where the infant City of St. Matthews, consisting of some three residential blocks, attempted on the very day of its incorporation to annex territory containing 35 times the area of the city. We pointed out that in order to justify annexation of territory a city must have had some substantial period of existence, and must have functioned as a city for a sufficient period of time to enable a rational projection of its future needs and prospects to be made.

Another illustration of overextension may be found in Gilley v. City of Russell, 212 Ky. 798, 280 S.W. 101, where a city consisting of 250 acres, which was in debt and had no immediate prospects of extensive growth, and did not have the facilities to supply city services to any added territory, attempted to annex 1,800 acres of surrounding territory. Another similar situation existed in Town of Latonia v. Hopkins, 104 Ky. 419, 47 S.W. 248, where a city of 275 population attempted to annex an area of 1,050 acres having a population of 1,500 to 2,000.

In the case before us, there is no suggestion that Louisville is not a prospering, growing city with a long experience of growth, or that its capacities will be overextended by annexation of the small area here in question. The only possibility of detriment to the interests of the city arises from the fact that the city will be required to establish a fire station and fire fighting facilities in or near the annexed territory, at a cost which will exceed the immediately available tax revenues from the annexed territory. However, the city showed that by reason of other annexations in the vicinity, a new fire station must be constructed in the vicinity in any event, regardless of whether the St. Matthews business district is annexed, and that only a portion of the cost of the new station would be allocable to the St. Matthews district, if annexed.

There was some effort by the remonstrants to show that the cost of furnishing regular city services to the annexed area would exceed the revenue from tax sources, but the evidence for the city was conclusive that this would not be so.

█ We are of the opinion that there was no evidence upon which to base a finding that the annexation would be contrary to the interests of the City of Louisville.

As concerns the question of manifest injury to the property owners in the annexed area, we apply the test of whether there will be a "clear and obvious imposition of material or substantial burdens". Masonic Widows' & Orphans' Home v. City of Louisville, 309 Ky. 532, 217 S.W. 2d 815. Again, we bear in mind that the property in question is urban in nature and adaptable to municipal uses, and we undertake to envisage at the outset what could constitute a burden upon property of such a nature.

█ Considering that the word "burden" contemplates something that is grievous, wearisome or oppressive (Webster's New International Dictionary), we think in terms of an obligation that creates a feeling of oppression or heavy burden because of the absence of compensating benefits. In other words, an obligation becomes a burden only when the benefits to be derived (often intangible) are disproportionately low in comparison to the load.

█ In many of our annexation cases it has been stated that the mere imposition of city taxes upon the annexed territory is not manifest injury within the meaning of the statute. Masonic Widows' & Orphans' Home v. City of Louisville, 309 Ky. 532, 217 S.W.2d 815; City of Louisville v. Sullivan, 302 Ky. 86, 193 S.W.2d 1017; Adkins v. City of Pineville, Ky., 271 S.W.2d 625; City of Georgetown v. Pullen, 187 Ky. 697, 220 S.W. 733; City of Ludlow v. Ludlow, 186 Ky. 246, 216 S.W. 596.

However, implicit in this statement is the thought that compensating benefits of some degree or nature will be received by the annexed territory.

There is no question in the case before us but that the annexed territory, being urban in nature, will receive benefits in the form of city services from the City of Louisville. The real question arises from the fact that the territory is now receiving what its residents consider to be adequate municipal services, at a lower cost, from the City of St. Matthews and from a volunteer fire department. The contention is, that the property owners in the annexed territory will receive no compensating benefits from the taxes they will be required to pay the City of Louisville because they already are receiving adequate services at a lower cost; therefore, it is argued, they will suffer manifest injury from the proposed annexation.

█ In Board of Trustees of Elkton v. Gill, 94 Ky. 138, 21 S.W. 579, this Court said that the question of whether the benefits of municipal government constitute *adequate* compensation for taxation is not for the courts to decide, being a matter exclusively for legislative decision. Therefore, it would seem that the question of *comparing* benefits and taxes, as between those of the City of Louisville and those of the City of St. Matthews, likewise is not for the courts, at least where there is no clear and obvious disproportion.

The evidence for the protestants, as concerns alleged injuries that would result from the annexation, was addressed ultimately towards the proposition that Louisville services would cost more than St. Matthews services. It is true there was evidence that property values in the business area would depreciate as a result of annexation, but the reason assigned for this depreciation in value was the increase in taxes. Likewise there was evidence that businesses on the south side of the Shelbyville Road would suffer a competitive

disadvantage to those on the north side, but again the reason for this was the fact that those on the south side would be subjected to the Louisville payroll and gross receipts tax. There were some expressions of opinion as to *confusion* that would result from conflicting municipal regulations, but this appears to be no more than would exist along the boundaries of any growing city.

The evidence for the City of Louisville was quite convincing that the services of that city would be better than those of the City of St. Matthews. We thus find ourselves in the position of being asked to determine whether the services will be *enough* better so that the increased taxes required to be paid to Louisville cannot be considered as causing manifest injury to the property owners in the annexed area.

 As previously indicated in this opinion, we think it is not a proper function of the courts, in annexation cases, to make fine comparisons of benefits and burdens. The courts are authorized to interpose only where there will be the clear and obvious imposition of material and substantial burdens. We can find no basis in the record before us for a finding that annexation of the territory in question will impose such uncompensated burdens upon the property owners as to be grievous, wearisome or oppressive. Accordingly, it is our opinion that the trial court should have directed a verdict in favor of annexation.

 All parties to the appeal join in asking this Court to express an opinion, by way of dicta, on two collateral points which are not directly raised on this appeal. One has to do with the effect annexation may have upon liability of the Louisville Sinking Fund for bonded indebtedness of the Louisville Independent School District. The other concerns the necessity of publishing, in the compiled general ordinances of Louisville, ordinances proposing

annexation of territory. Admittedly, any expression of opinion on these two questions would constitute dicta. Particularly with respect to the school bond question, we would be endeavoring to pass upon the rights of a number of directly interested parties who are not represented on this appeal. We believe it would not serve the ends of justice to express an opinion on these points. However, on the school bond question, we call attention to Board of Education of Louisville v. City of Louisville, Ky., 258 S.W.2d 707, which is not mentioned in briefs.

The judgment is reversed, with directions to sustain the motion of the City of Louisville for judgment notwithstanding the verdict, and to enter judgment accordingly.

MOREMEN, J., not sitting.