**CITY OF COVINGTON, Kentucky, Appellant,**

v.

**Lawrence F. BECK, George Kreutjanz, City of Lakeside Park, Kentucky, City of Erlanger, Kentucky, and David Stallard, Appellees.**

Court of Appeals of Kentucky.

May 18, 1979.

Rehearing Denied July 6, 1979.

Discretionary Review Denied Oct. 2, 1979.

A. Wallace Grafton, Jr., Sheryl G. Snyder, Francis J. Mellen, Jr., Wyatt, Grafton & Sloss, Louisville, Patrick C. Hickey, Covington City Sol., Covington, for appellant.

Joseph L. Summe, Peter J. Summe, Summe & Summe, Covington, for appellees Beck and Kreutjzans.

Frank A. Wichmann, Covington, for appellees City of Erlanger and David Stallard.

J. Gregory Wehrman, Covington, for appellee City of Lakeside Park.

Before VANCE, WHITE and WILHOIT, JJ.

WILHOIT, Judge.

This is a municipal annexation case in which the City of Covington appeals from the substance of two partial summary judgments incorporated by reference in a subsequent final judgment of the Kenton Circuit Court. The first summary judgment was entered on March 31, 1976, and held that Covington's proposed annexation of certain surrounding territory was preempted and nullified by the General Assembly's classification of the nearby City of Edgewood as a fourth-class city. A portion of the City of Edgewood was carved out of territory proposed for annexation by the City of Covington. The second summary judgment was entered October 27, 1976, on behalf of the City of Erlanger and held that the City of Covington was precluded from annexing the southwest corner of the disputed area because the March 31 judgment rendered that area no longer contiguous with the Covington city limits. Both summary judgments were renewed and incorporated in a final judgment entered on August 1, 1978. Appeal is taken from this judgment.

This case is one of a series involving efforts of the City of Covington to annex surrounding territory. On February 21, 1962, the Covington City Commission enacted Ordinance Number 0–11–62 by which it proposed to annex certain unincorporated territory. On March 16, 1962, the remonstrants filed a complaint in the Kenton Circuit Court protesting the annexation, thus preventing the City of Covington from enacting a final ordinance of annexation.

On June 25, 1962, the City of Summit Hills Heights, a city of the sixth class, was incorporated and established by the Kenton Circuit Court within the territory proposed for annexation. On July 30, 1965, the City of Pius Heights was similarly incorporated within the disputed territory. Subsequently, both Summit Hills Heights and Pius Heights annexed additional territory within the area.

On December 10, 1967, the Cities of Summit Hills Heights, Pius Heights, and Edgewood consolidated into a new city named Edgewood pursuant to KRS 81.410 et seq. The new City of Edgewood was classified a fourth-class city by the 1968 Session of the General Assembly. Act of February 16, 1968, ch. 5, 1968 Ky. Acts 5.

The remonstrants moved for partial summary judgment on April 2, 1969, arguing that the Legislature's reclassification of the city had foreclosed Covington's right to annex the same territory. The court entered a pretrial order and judgment for the re-

monstrants. On September 14, 1971, the City of Covington appealed to the then Court of Appeals. On November 23, 1973, the Court of Appeals dismissed the appeal in an unreported memorandum opinion holding that the judgment was interlocutory and not appealable under CR 54.01 and CR 54.02.

Upon remand to the Kenton Circuit Court and after discovery, the judge entered another order and judgment on March 31, 1976, which was substantially identical to the previous judgment. The judgment determined that the legislative classification of Edgewood as a fourth-class city nullified the prior annexation ordinance.

The March 31, 1976 order also had the effect of preventing the City of Covington from annexing another portion of the area originally proposed for annexation. The territory awarded to Edgewood was centrally located within the area and had the effect of dividing the annexation area so that its southwest portion was no longer contiguous with Covington city limits. Consequently, the City of Erlanger moved for summary judgment to preclude that portion of the area from being annexed by Covington. This motion was granted on October 27, 1976.

In 1976, the General Assembly enacted KRS 81.145 which purported to allow the freeholders in an annexation area to "de-annex" the area from the annexing city by referendum. However, in *City of Taylor Mill v. City of Covington*, Ky.App., 575 S.W.2d 159 (1978), this Court struck down that statute as unconstitutional in violation of Section 156 of the Kentucky Constitution.

The first question presented on appeal is whether the trial court was correct in holding that the 1968 Act reclassifying the City of Edgewood from a sixth to a fourth-class city "vitiated" Covington's annexation ordinance and prevented it from going forward with the proposed annexation. We believe that the court read more into the Act than was justified, but even if the court's interpretation of the Act were correct a different result from that which it reached would be required.

■ It is undisputed that at the time Covington enacted its ordinance proposing annexation the territory in dispute was unincorporated and that no other municipality had taken any steps to annex it. The longstanding rule in this jurisdiction, and that generally applied elsewhere, is that in the case of rivalry between two annexing municipalities that which takes the first "public procedural step" to annex takes priority. *City of Louisville v. Kraft*, Ky., 297 S.W.2d 39 (1956); *City of Lincolnshire v. Highbaugh Realty Co.*, Ky., 278 S.W.2d 636 (1955). Once that procedural step has been taken, the subsequent incorporation of the territory proposed for annexation has no effect on the procedure by which the annexation is effected. That is, the municipality which first commenced the annexation proceedings may continue just as if the territory had not been subsequently incorporated. *Pfeiffer v. City of Louisville*, Ky., 240 S.W.2d 560 (1951). Applying those principles to this case, it is evident that because Covington had begun to annex the territory under KRS 81.140 as if the area were unincorporated it was entitled to proceed and to avoid the referendum provisions of the statutes governing annexation of territory of another city.

The appellees argue, and the trial court agreed, that Covington's right to proceed under the established statutory framework as that framework has up to now been interpreted was nullified by the intervening Act reclassifying the City of Edgewood. The premises upon which this argument is based may be best summarized as follows. Section 156 of the Kentucky Constitution grants to the General Assembly authority to classify, organize, and regulate cities. Pursuant to this authority, the City of Edgewood was reclassified in 1968, and implicit in the reclassification was a recognition and determination by the General Assembly of its boundaries as then existing. Because state statutes dealing with the establishment and regulation of cities take precedence over city ordinances, it follows that any ordinance of the City of Covington

affecting the boundaries of the City of Edgewood as at least impliedly established by the General Assembly was nullified. The flaws which must lead to the unraveling of the fabric of this argument are that it misconstrues the significance of classification statutes and that it overlooks pertinent constitutional limitations on the authority of the General Assembly.

We find nothing in the 1968 Act indicating a legislative intent to do more than carry out the mandate of Section 156 that changes in the classification of cities shall be made "as the population of said cities and towns may increase or decrease." It is indicative only of a determination by the Legislature that, based on information satisfactory to it, Edgewood then had a population numbering at least three thousand but less than eight thousand. It is certainly not indicative of an intent to legislate the corporate limits of that city.

Even if by the classification act the Legislature intended to set the corporate limits of Edgewood, such intent would be frustrated by the precise language of both Sections 156 and 59 of the Kentucky Constitution, as well as a long line of interpretative decisions stretching back almost to the very time when the present constitution was adopted. Section 156 plainly requires that the General Assembly may provide for the organization and government of cities by general laws. Section 59 plainly requires that "where a general law can be made applicable, no special law shall be enacted." Just as the General Assembly is without power by special act to establish a particular city, *Albershart v. Donaldson*, 149 Ky. 510, 149 S.W. 873 (1912), so it is powerless by special act to set the boundaries of a particular city. The method by which cities are established and governed and by which their boundaries are set, increased, or decreased must be, and is, presently provided for by general laws.

A better understanding of the purpose of these constitutional limitations may be reached by consideration of some of the circumstances surrounding their drafting and adoption. The present constitution was the first to limit the powers of the Legislature with respect to the organization and government of municipalities. By the time of the constitutional convention in 1890, Kentucky was said to have "a thousand communities, each with a different code of laws, each operating in a different way, each with differing judiciary, and differing agencies." II Kentucky Constitutional Proceedings and Debates 2129 (1890). On many occasions, city officials would come to the Legislature after their election and have their salaries increased or their terms of office doubled by special acts. *Id.* at 2150. It was observed on the floor of the constitutional convention that:

> In the past, as each city was governed by its own charter, and as its operation must be local and confined entirely to the city controlled by it, the legislator at large gave himself no concern about any provision in it, and remitted all responsibility for its enactment to the member who represented each particular town, and thus this most important department of legislation no longer was the result of the wisdom and the judgment of the entire body, but became the subject of the caprice, whim, avarice or passion of the member who represented the particular city whose charter was to be prepared or changed. *Id.* at 2129.

To ensure that such a state of affairs was brought to an end and would not recur, the people of Kentucky adopted Sections 156 and 59 as a part of our Constitution.

The next question presented is the effect of the amendment of KRS 81.160 on the procedure which Covington must follow to complete annexation. Prior to its amendment, KRS 81.160 read as follows:

> (1) Whenever a second-class city desires to annex any city of the second, third or fourth class, the legislative body of the city proposing to annex shall pass an ordinance or resolution designating the city proposed to be annexed, declaring it desirable to annex the city and providing that the question of annexation shall be submitted to the qualified voters of the city to be annexed at the next

regular election. The mayor of the city proposing to annex shall certify the action of the city to the county clerk, who shall have printed on the ballots provided for use in the city proposed to be annexed, the question: "Are you in favor of annexing to the City of . . . ."? Opposite the question shall be printed "Yes" and "No," with squares for stamping the cross mark to indicate preference. If a majority of those voting on the proposition favor annexation, the city proposing to annex shall pass an ordinance declaring the other city annexed, and that city shall then be a part of the annexing city.

The 1978 amendment added the following:

> (2) The provisions of subsection one (1) shall also apply in those cases where the city to be annexed was incorporated and became classified as a city of the second, third or fourth class by the legislature prior to January 1, 1978, even if the city was so classified after the institution of annexation proceedings, provided that, the final annexation ordinance has not been adopted by the effective date of this Act. Act of March 30, 1978, ch. 300, § 1, 1978 Ky. Acts 850.

It is clear from the wording of KRS 81.160(1) that it applies only when second-class cities desire to annex territory which is already incorporated at the time the annexation proposal ordinance is adopted. The effect of subsection (2) is to apply the referendum requirements of subsection (1) to the annexation of territory which was incorporated and classified by the Legislature before January 1, 1978, although annexation proceedings had begun before the territory was thus classified. This appears to be a legislative attempt to extend the effect of subsection (1) and modify the rule enunciated in *Pfeiffer v. City of Louisville, supra*.[1] It cannot be questioned that the Legislature has authority to do so, but it must do so in a constitutional manner. Although we are fully aware that our role in statutory construction is to save and not

destroy, *Folks v. Barren County*, 313 Ky. 515, 232 S.W.2d 1010 (1950), we are nevertheless compelled to agree with the appellant that subsection (2) is unconstitutional.

Because subsection (2) applies only to cities which have been classified prior to January 1, 1978, it can never have any prospective application, and indeed, its retrospective application seems to be limited to the present controversy with Covington. Manifestly it does not affect all second or third or fourth-class cities equally but accords a benefit to those classified prior to January 1, 1978. The Cities of Edgewood and Villa Hills near Covington exemplify the inconsistent impact of the statute. Edgewood was classified a fourth-class city in 1968 while Villa Hills was so classified after January, 1978. Under the statute as amended, territory of one of these same class cities would be subject to annexation only with a referendum while that of the other would not.

In an analogous Kentucky case, *Harlan County v. Brock*, 246 Ky. 372, 55 S.W.2d 49 (1932), the Court struck down a statute providing for a district detective in judicial districts composed of two counties having a population of 100,000 or more according to the 1930 census. The Court held that the reference to the 1930 census was fatal since only one judicial district in the Commonwealth had a population of 100,000 or more in 1930, and thus, the classification could not be made to apply in the future to any subsequent districts which might attain the required population. The Court said, "Where classification is so static as this, it is not based on reasonable distinctions, but is essentially arbitrary; thus rendering the act based upon it special or local." 246 Ky. at 374, 55 S.W.2d at 50.

We should add, however, that subsection (2) is severable from the remainder of that statute, thus leaving the remaining provision intact. *See Kentucky Municipal League v. Commonwealth, Department of Labor*, Ky., 530 S.W.2d 198 (1975); KRS 446.090.

---

1. *Pfeiffer* dealt with annexation by a first-class rather than a second-class city, but the relevant statutory scheme for annexation of incorporated territory by either is almost identical.

Having concluded that the trial court erred in finding against the City of Covington on the dispute over territory within the City of Edgewood, it is apparent that so much of the final judgment as was entered in favor of the City of Erlanger likewise cannot stand. The southwest area of the original territory proposed for annexation is once again contiguous with the Covington city limits. *See Ridings v. City of Owensboro*, Ky., 383 S.W.2d 510 (1964). Consequently, we reverse that portion of the final judgment as well.

We are not insensitive to the wishes of those persons who believe that it would be inappropriate for Covington to annex the disputed areas. Neither do we wish to circumvent the intent of the Legislature on any matter. However, the Constitution and the General Assembly have provided a framework for the classification of cities and the annexation of territory, and it appears that Covington properly followed that procedure in adopting its ordinance proposing to annex the area in question. If individuals wish to challenge the action taken by the City of Covington, KRS 81.140 prescribes a course of action. If the General Assembly is dissatisfied with the statutory scheme provided for the annexation of territory by municipalities, it is empowered to amend that scheme, bearing in mind the requirement that this not be done by special acts and that all cities of the same class must possess the same powers and be subject to the same restrictions.

The judgment is reversed.

All concur.