**WEST KENTUCKY RURAL ELECTRIC COOPERATIVE CORPORATION, Appellant,**

v.

**CITY OF BARDWELL, Kentucky, Appellee.**

No. 2010–CA–001140–MR.

Court of Appeals of Kentucky.

Dec. 16, 2011.

Melissa D. Yates (Argued), Glenn D. Denton, Paducah, KY, for appellant.

Kerry D. Smith (Argued), Paducah, KY, for appellee.

Before MOORE, STUMBO, and WINE, Judges.

## OPINION

WINE, Judge.

West Kentucky Rural Electric Cooperative Corporation (WKRECC) appeals from a summary judgment by the Carlisle Circuit Court resolving a utility service dispute in favor of the City of Bardwell, Kentucky. Upon a thorough review of the record, we affirm the Carlisle Circuit Court.

### Facts

This case involves a territorial dispute between a rural electric cooperative and a municipal electric utility over the right to

provide electrical service to an area annexed by the City of Bardwell in February 2008, for the construction of a new county courthouse. The old Carlisle County Courthouse, formerly located at 77 East Court St. North, in Bardwell, Kentucky, was destroyed by a fire on December 26, 2007. The Kentucky General Assembly approved a new courthouse and authorized the funding for it in 2008. The annexed area is now the site of the new Carlisle County Courthouse.

WKRECC is a rural electric cooperative supplying energy to consumers in Carlisle County and the surrounding areas. Bardwell City Utilities (BCU) is a municipal electric utility that supplies energy to consumers in the city of Bardwell. However, electrical service to Bardwell and the area surrounding the city is provided by four different utilities. Kentucky Utilities Company provides service in the area to the north, WKRECC provides service in the area to the east, Hickman–Fulton Counties Rural Electric Cooperative Corporation provides service generally to the south and WKRECC, and BCU provides service to much of the city of Bardwell itself.

The dispute in this action centers around the right to provide utility service to the annexed area, which is an area in the northeastern side of the city comprised of three tracts of land. The new courthouse is situated in this area. Tract I is owned by the Carlisle Fiscal Court and is approximately forty-one (41) acres in size. Tract II is also owned by the Carlisle Fiscal Court and is approximately four (4) acres in size. Tract III is owned by the Carlisle County Park and Recreation Board and is approximately twenty (20) acres in size. Tracts I, II, and III com-

pose the area referred to herein as "the annexed area."

Tract I was conveyed to the Carlisle Fiscal Court in 2008 from a larger tract of farmland containing approximately one-hundred (100) acres, referred to in the record as the "Mantle Farm." Tract II was a small previously undeveloped strip of land and Tract III was a public park. All three tracts are contiguous. The entire area was annexed into the city limits of Bardwell in 2008.

At the time this action was filed, no building, other than the initial construction of the new courthouse, had occurred on Tract I or Tract II. However, Tract III contained a ballpark owned by the Carlisle County Park and Recreation Board which has been serviced with energy by BCU since 1972. WKRECC maintains that BCU had previously been able to service the ballpark, even though it is within WKRECC's certified territory, only because WKRECC gave permission for BCU to do so.

In the early 1970s, the county park was developed just outside of the city limits. Also in the early 1970s, the Public Service Commission (PSC) certified various "territories" to different retail electric suppliers operating in the vicinity of Bardwell. Tract III, on which the park sits, was drawn within the territory certified to WKRECC. BCU notes that it was not a party to the map drawn by the PSC and was not a signatory to the agreement. It further argues that, as a municipal utility, the PSC has no jurisdiction over it.[1]

Regardless, in 1972, when the Carlisle County Park and Recreation Board sought to have electrical service provided for the park, WKRECC did not provide service to

1. The trial court agreed with BCU, as do we, that the PSC map does not control over a municipal utility and the PSC does not have jurisdiction over BCU, as a city-owned utility. *See* Kentucky Revised Statutes (KRS) 96.880.

the park. BCU maintains that the park was seen as a "bad load," meaning that it would produce insufficient capital sold per unit to make it worthwhile for an electrical supplier to build the necessary infrastructure improvements on the land. BCU further maintains that despite the park being a "bad load," it was willing to make the necessary improvements and provide electricity to the park.

WKRECC sent a letter to BCU in November of 1972 conveying that it did not object to BCU furnishing electricity to the park. BCU has provided electricity to the park continuously since that time and the bills for the service have been paid for by the Carlisle Fiscal Court.

After the Carlisle County Courthouse was destroyed by fire, plans were approved for a larger structure. Due to the size of the new structure, the new Judicial Center was to be built outside the then-existing city limits. The property described above as Tract I was annexed by the City of Bardwell along with Tract II and III.

BCU argues that since a large structure was being built on the property, it would no longer be a "bad load," but instead, was poised to be quite profitable. In 2009, the Project Development Board for the Carlisle County Courthouse requested that BCU provide service to the new facility.[2] As stated, BCU had provided service to Tract III of the disputed area since the 1970s. However, in 2009, once BCU ran its service line over Tracts I and II, WKRECC filed a declaratory judgment action alleging that the site of the new courthouse was within its service territory and it was entitled to provide the electrical service.

After the filing of the petition, discovery was allowed to proceed and both parties filed motions for summary judgment, each claiming to be entitled to judgment as a matter of law. On April 30, 2010, the trial court entered summary judgment in favor of BCU. The court treated the annexation as a single annexation, rather than a separate annexation of each individual tract and the trial court concluded that the PSC service territory map was inapplicable to BCU. Further, the court found that since the Carlisle Fiscal Court was an existing customer of BCU, that BCU had the dominant right to continue to serve the Carlisle County Courthouse in its new location.

WKRECC now appeals. On appeal, WKRECC contends that KRS 96.538 [3] was misinterpreted by the trial court, that the court erred in its interpretation of the word "consumer," and that the court erred by treating the annexation of the three tracts as a single unit.

## Standard of Review

The standard of review employed by this Court when reviewing the grant or denial of a motion for summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996). *See also Godman v. City of Fort Wright*, 234 S.W.3d 362, 368 (Ky. App.2007). In doing so, we review the record in a light most favorable to the non-moving party and resolve any doubts in their favor. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky.1991).

---

2. BCU or its predecessors had provided electrical services to the earlier county courthouses since 1886.

3. Held unconstitutional on other grounds by *City of Nicholasville v. Blue Grass Rural Elec. Co-op. Corp.*, 514 S.W.2d 414, 417 (Ky.1974).

## Analysis

On appeal, WKRECC contends that the trial court erred as a matter of law by misinterpreting KRS 96.538 regarding the providing of electric services after annexation, by conflating the terms "consumer" and "customer," and by considering the three tracts in question as one tract.

KRS 96.538(1) provides as follows:

Any utility providing electric service in any area annexed, subsequent to June 16, 1960, by any municipality shall have the dominant right to continue to provide electric service in said area to consumers then being served and to new consumers located nearer to its facilities than to the facilities of any other utility as all those facilities were located immediately prior to annexation.

WKRECC contends that while KRS 96.538(1) is intended to guarantee utilities will not lose consumers by virtue of annexation, the statute cannot be interpreted so broadly as to mean that the utilities will get an exclusive right to provide energy to those consumers, including for new or expanded services. WKRECC also argues that the trial court's focus on "who is paying the bill" is misguided, and that the word "consumer" is not synonymous with "customer." Specifically, WKRECC argues that the Carlisle Recreation Board is the consumer, while the Carlisle Fiscal Court is the customer. WKRECC cites Webster's dictionary for the proposition that a "consumer" is one who "utilizes" goods or services, while a "customer" is one who "purchases" goods or services.

■ Statutory interpretation is a question of law for the courts. *City of Worthington Hills v. Worthington Fire Protection Dist.*, 140 S.W.3d 584 (Ky.App. 2004). We interpret a statute according to

its plain meaning, construing all words and phrases in accordance with their common usage. KRS 446.080(4). It is a general principle of statutory construction that we will not be guided by a single word or sentence in the statute, however, but that we will consider the statute as a whole with an eye towards promoting its object and purpose. *County of Harlan v. Appalachian Regional Healthcare, Inc.*, 85 S.W.3d 607, 611 (Ky.2002). In doing so, we keep in mind that the aim of statutory construction is always to effectuate the intent of the legislature. *Id.*

■ The legislature has authority under its police power "to regulate [the] rates and modes of conducting business of public utilities[.]" *City of Florence v. Owen Elec. Co-op., Inc.*, 832 S.W.2d 876 (Ky.1992). KRS 96.538 was enacted by the General Assembly through the exercise of this power. *Id.* We have previously construed "KRS 96.538 as validly prohibiting a city from extending the services of its municipally owned" utility into an area of the annexed territory where another utility has "the dominant right to render service" under the statute. *City of Nicholasville*, 514 S.W.2d at 417.

In the present case, we disagree with WKRECC's interpretation of the words "customer" and "consumer." Indeed, we refuse to split hairs over the use of terms so commonly interchangeable. We find it instructive that even our Supreme Court has used the words "customer" and "consumer" synonymously. *See City of Nicholasville, supra.*[4] Further, we are required by precedent and statute to afford a term its ordinary meaning unless it has acquired a technical meaning. KRS 446.080(4); *Baker v. White*, 251 Ky. 691, 65 S.W.2d 1022, 1024 (Ky.App.1933). As

---

4. Indeed, even Black's Law Dictionary 386 (6th ed.1990) defines "customer," in part, as "[a] buyer, purchaser, *consumer* or patron." (Emphasis added).

KRS Chapter 96 does not define the word "consumer," we refuse to give the term a meaning other than the one ordinarily accepted in popular usage.

██ The question, as we frame it, then, is not whether an entity is a customer or consumer, but whether a particular entity may be considered a consumer under the statute. We find that the determination of whether a particular entity or individual is a "consumer" under the statute is a question best left up to the trial court, as the finder of fact, on a case-by-case basis. The analysis may certainly take into account "who pays the bills," as the trial court did in the present case. However, we agree with WKRECC that the question of "who pays the bills," cannot be the sole determinant in every case, lest situations arise where the entity paying the bill is quite obviously not the "consumer" in the traditional sense. Rather, it seems more appropriate that a court should consider both *who pays* for the service and *who uses* the service.

In the present case, we agree with WKRECC that the trial court focused solely on "who paid the bill." However, as long as the ultimate outcome is correct, we may affirm the trial court on other grounds. *Haddad v. Louisville Gas & Elec. Co.*, 449 S.W.2d 916, 919 (Ky.1969). We find that the county both paid for the services and used the services. Indeed, the park was simply an extension of the county itself, although the management of the park was delegated to the Recreation Board. Likewise, the courthouse is both owned and operated by the county, and the electrical services provided to it are (and were previously) paid by the county. When viewing the comparison in this light, the distinction between the two entities becomes illusory. Both are arms of the county.

Thus, we affirm the trial court's finding that the Carlisle Fiscal Court was the consumer (both before annexation and after) and that BCU has the dominant right to furnish electricity to the new courthouse. Because the statute draws no distinction between consumers who "add new services," neither shall we draw any distinction for consumers who "add new services." [5] Because WKRECC served no consumers in the area prior to annexation, and because the Carlisle Fiscal Court cannot be considered a new consumer, we find that it has no superior right to provide electricity to the new Carlisle County Courthouse.

██ Finally, we consider WKRECC's last argument, that the trial court erred by viewing the three tracts as one annexed property. WKRECC argues, under this theory, that BCU did not serve any customers within the "annexed area" because each tract must be treated as a separate annexation. Under this line of reasoning, as BCU was only supplying electricity to Tract III, and not to Tract I, *neither* utility would have been providing electricity in the "annexed area" prior to annexation. If WKRECC's argument were accepted, it would be given the dominant right to supply electricity to the new courthouse because its facilities are closer.

This argument cannot stand, however. The trial court properly construed the annexation of the properties as a single annexation. The view has long been expressed in the Commonwealth that an area annexed by a city must be regarded as a single unit, rather than separate parcels viewed in isolation. *Donovan v. City of Louisville*, 299 S.W.2d 636 (Ky.1957), *Pfeiffer v. City of Louisville*, 240 S.W.2d

**5.** Nor have we been cited any authority for   this proposition.

560, 563 (Ky.1951); *Masonic Widows and Orphans Home and Infirmary v. City of Louisville,* 309 Ky. 532, 217 S.W.2d 815, 817 (Ky.1949).[6] Further, this view is supported by the approach of many other jurisdictions. *E.g., Hendricks v. City of Nampa,* 93 Idaho 95, 100, 456 P.2d 262, 268 (Idaho 1969); *City of Bourbon v. Miller,* 420 S.W.2d 296, 301 (Mo.1967); *State ex rel. Nelson v. City of Anoka,* 240 Minn. 350, 352, 61 N.W.2d 237, 239 (Minn.1953); *In re City of Laurel,* 863 So.2d 968, 971 (Miss.2004). Hence, we find no error.

In light of the foregoing, we hereby affirm the summary judgment of the Carlisle Circuit Court.

ALL CONCUR.

---

**6.** We find the statute cited by WKRECC to be inapplicable, as KRS 81A.410(3) discusses properties which are adjacent to a city, but are "not adjacent to one another[.]" The properties in this case are adjacent, however, as they each share a common border.