CITY OF NORTHFIELD, Appellant,

v.

HOLIDAY MANOR, INC., et al., Appellees.

Court of Appeals of Kentucky.

May 3, 1974.

Foster L. Haunz, Dougherty, Gray & Haunz, Louisville, for appellant.

Kenneth J. Tuggle, Joseph B. Helm, Mark Davis, Jr., Brown, Todd & Heyburn, John G. Carroll, J. Bruce Miller, Louisville, for appellees.

CATINNA, Commissioner.

Northfield, a sixth-class city in Jefferson County, adopted an ordinance for annexation of territory consisting of a residential area, an undeveloped area, and a commercial area. Five of the property owners located in the commercial area and the owner of 6½ acres of the undeveloped area, being less than 10% of the freeholders in the territory proposed to be annexed, filed a remonstrance suit attacking the annexation. The trial court entered a summary judgment declaring the annexation void, and an appeal to this court followed.

By our opinion of March 31, 1972, we reversed the trial court and remanded the case for further proceedings. City of Northfield ·v. Holiday Manor, Inc., Ky., 479 S.W.2d 596 (1972). Upon retrial, the parties stipulated:

" * * * there are less than 75% of the freeholders as defined by Law under the Statutes remonstrating.

"We further have stipulated that the issue before the court on this trial is under the Statute, KRS 81.110(2), and the first sentence, 'the issue of whether the adding of the territory will be for the interest of the city and will cause no manifest injury to the persons owning real estate in the territory sought to be annexed.' "

Northfield, prior to the annexation ordinance, consisted primarily of a residential area of 133 acres. Included in the area to be annexed were Wynnewood Subdivision where some 55 families resided, a commercial area consisting of some 26 acres, and an undeveloped area of 59.4 acres.

The trial court made extensive findings of fact and rulings of law, and a judgment was entered invalidating the ordinance of annexation, from which judgment Northfield prosecutes this appeal.

The findings of fact involved a calculation of the percentages of the values of the property owned by the remonstrants in relation to that of all the owners and the area of the remonstrants' property in relation to the total area involved. The court found that insofar as the commercial area was concerned the only benefit that it would receive from the annexation, in return for taxes paid, would presently be some additional police protection. The city did not intend to assume the obligation of parking-lot construction, lighting, and maintenance; and curb and gutter construction and maintenance within the area of the shopping center. Nor did the city intend to assume the obligation of free garbage collection for the commercial area, although the court found that such benefit would be extended to Wynnewood and the undeveloped area. The conclusions of law reached by the court included the following:

"7. Northfield will extend to Wynnewood supplemental police protection, garbage collection service, street lighting and maintenance. Northfield will receive from Wynnewood sufficient additional tax revenue to meet the increased costs of such extension. Therefore, with respect to Wynnewood, the annexation will be for the interest of the City and will cause no manifest injury to the persons owning real estate in Wynnewood.

Northfield will not extend to the commercial area the services mentioned hereinabove. Further, Northfield will extend to the undeveloped area only garbage collection service out of the services mentioned herein above. In the latter two cases, Northfield taxation and regulation constitute burdens in substantial excess over Northfield benefits because, in the latter two cases, Northfield will not provide the standard benefits of municipal incorporation. Therefore, with respect to the commercial and the undeveloped areas, although annexation will be for the interest of the City, annexation will also cause manifest injury to the persons owning real estate in the commercial and undeveloped areas.

"8. As a matter of law, the Court has concluded that annexation will not cause manifest injury to the persons owning real property in Wynnewood, but that annexation will cause manifest injury to the persons owning real property in the commercial and undeveloped areas. As these latter persons own property comprising 65.9% of the assessed valuation of, and 76.65% of the acreage of, the annexation area, manifest injury to these property owners constitutes manifest injury to the annexation area's property owners as a class. See Masonic Widows and Orphans Home v. City of Louisville, supra. And, as an annexation statute must stand or fall as a whole, City of Prestonsburg v. Conn., supra, [Ky. 317 S.W.2d 484,] under the Court's findings of fact and conclusions of law, Northfield Ordinance 70–4 must fall. In so holding, this Court notes that, but for the mandate against piecemeal annexation in City of Prestonsburg v. Conn., supra, the commercial area, and probably the undeveloped area, are sufficiently separate and distinct as units from Northfield and Wynnewood to suggest declaring the annexation ordinance effectual only as to Wynnewood but not as to the commercial and undeveloped areas. See Sullivan v. City of Louisville, [295 Ky. 68,] 173 S.W.2d 981 (1943)."

In reviewing these two conclusions, it is noted that the court held as a matter of law that the annexation of the area would be to the interest of the City of Northfield, leaving then only the question of whether the annexation would cause manifest injury to the "persons owning real estate in the territory sought to be annexed * * *." KRS 81.110(2).

The first sentence of Conclusion No. 8 constitutes an erroneous application of the law governing the annexation of the territory. The court, although holding as a matter of law that the annexation would not cause manifest injury to the persons owning property in Wynnewood, held that it would cause manifest injury to persons owning real estate in the commercial and undeveloped areas. The court then reasoned that because the commercial area owned by the remonstrants comprised 65.-9% of the assessed value and 76.65% of the area of the territory to be annexed, there was manifest injury to the property owners as a class. The manifest injury to persons owning real estate in an area sought to be annexed is defined as meaning "not some injury to some of such property holders by the annexation, but manifest injury to the property holders as a class or the majority of them." City of Louisville v. Sullivan, 302 Ky. 86, 193 S. W.2d 1017 (1946.) We have never conceived the fact that a majority within an area proposed to be annexed could be determined by a percentage relationship of values or areas owned by parties in the annexed territory.

The statute speaks of freeholders and requires a remonstrance by freeholders in the territory, yet in the same section requires a finding of manifest injury to the persons owning real estate in the territory. A freeholder is defined as one holding a title to real estate and the amount of value of his interest therein is immaterial. State v. City of Fraser, 191 Minn. 427, 254 N.W.

776 (1934). See In re Borough of Phoenixville, etc., 218 Pa.Super. 205, 275 A.2d 863 (1971). In that case the question of a freeholder and an owner was discussed at some length insofar as it affected an annexation proceeding. The court therein defined a freeholder as one who has the actual possession of land for life or a greater estate. However, the court further stated that owner and freeholder were not synonymous in those cases where property was held by a husband and wife as tenants by the entireties, each of them owning at least a life estate and each therefore being a freeholder, but as a conveyance of the property required the signatures of both the husband and wife, the two of them together constituted the owners of the property.

 Applying the rule as to freeholders and owners as above set out, we find from the record that there were at least 108 freeholders or 54 owners in the Wynnewood Subdivision. There were also nine property owners in the commercial area who did not protest and five property owners in the undeveloped area who did not protest, and of this number the court found that not less than 54 owners, and apparently more, did not suffer manifest injury as a result of the annexation. Consequently, the manifest injury sustained in the area sought to be annexed was not sustained by the property holders as a class or a majority of them. In Masonic Widow & Orphans Home v. City of Louisville, 309 Ky. 532, 217 S.W.2d 815 (1948), the term manifest injury is declared to mean "the clear and obvious imposition of material or substantial burdens upon the owners of the property as a class or the majority of them." In Mitchell v. Central City, Ky., 354 S.W.2d 281 (1962), we said:

> "The rule is that the question of material injury is to be determined from the standpoint of the property holders as a class or the majority of them, and not with reference to individual owners. * * *. The view to be taken is of the entire area and not the separate parcels of real estate in isolation."

The trial court made an effort to weigh the substantiality of the benefits to be received by the commercial area in comparison with the taxes which would be collected. The levy of taxes alone does not constitute a manifest injury. City of Northfield v. Holiday Manor, Ky., 479 S.W.2d 596 (1972). We do not think that it is within the province of this court to usurp the legislative authority of a city in an effort to delineate benefits and injuries arising from an annexation. We do not find here any clear and obvious imposition of material and substantial burdens. There is no place in the record before us which includes a finding that annexation of the territory in question will impose such uncompensated burdens upon the property owners as a class, and not merely the owners of commercial property, as to be grievous, wearisome, and oppressive. Accordingly, it is our opinion that the trial court should have entered a judgment approving the annexation. Cf. City of Louisville v. Kraft, Ky., 297 S.W.2d 39 (1956).

The judgment is reversed with directions that a new judgment be entered approving the annexation.

All concur.